## C. T. INV. CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10750.

Circuit Court of Appeals, Eighth Circuit.
Feb. 25, 1937.

WOODROUGH, Circuit Judge, dissenting.

Chase Morsey, of St. Louis, Mo., for petitioners.

M. H. Eustace, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition to review the decision of the Board of Tax Appeals affirming a deficiency in tax amounting to $6,-619.87 asserted by the Commissioner as additional taxes for the year 1930 against W. E. Geck, Incorporated, and against the transferees of that company.

The petitioners, eleven in number, are transferees of W. E. Geck, Incorporated. There were separate petitions filed by the petitioners with the Board of Tax Appeals, and separate answers filed by the respondent Commissioner.

In order to simplify the issues in the case, it was agreed between counsel before the Board of Tax Appeals that the only question involved in these proceedings is whether or not a certain transaction hereafter set forth between the Central Transfer Company of Missouri and the Central Transfer Company of Delaware constituted a statutory reorganization within the meaning of the Revenue Act of 1928 (45 Stat. 791). If it did, there was no tax

due; if it did not, then the amount of tax asserted by the Commissioner is correct.[1]

The facts are substantially as follows: The Central Transfer Company of Missouri, hereinafter referred to as the Missouri Company, prior to its dissolution in 1930, was a corporation organized and existing by virtue of the laws of the State of Missouri and was engaged in hauling and transferring freight from various manufacturing and industrial concerns in Missouri and Illinois to the railroad tracks, being paid for such hauling entirely by the railroads. There were only two concerns in this business in St. Louis: The Missouri Company and the Columbia Terminal Company. The Missouri Company had been in existence about 20 years prior to 1930 with a capital stock of 720 shares, $72,000. It was a closed corporation having about nine or ten stockholders. During the course of years the Missouri Company had grown more or less and had acquired some assets which had no connection with its transfer business, consisting of notes receivable of a corporation which was not in a position to pay them.

Prior to 1930 it was considered desirable by the stockholders to reorganize the Missouri Company and to dispose of these last-mentioned assets to another Company in order to put the Missouri Company on a business-like basis. The Missouri Company also considered several plans: (1) Of increasing its capital stock; (2) a plan of either consolidating with or selling out to its only competitor, the Columbia Terminal Company; (3) other plans.

Upon advice of its attorney, Schaumberg, also stockholder of the Company, the Missouri Company decided to organize a Delaware corporation. Thereupon, on May 28, 1930, the Central Transfer Company of Delaware, hereinafter referred to as the Delaware Company, was incorporated with an authorized capital of 10,000 shares of no par value. The qualifying stockholders and directors of the Delaware Company on May 29, 1930, were the Cleveland attorneys for the Missouri Company, and only ten qualifying shares were subscribed for or issued at that time.

At the first meeting of its directors on May 29, 1930, at Cleveland, Ohio, the Delaware Company by resolution elected to exercise an option agreement offered to it by the Missouri Company to acquire the business and assets of the Missouri Company; and on June 6th it notified the Missouri Company accordingly, specifying June 14, 1930, as the date for the transfer of such business and assets. The Missouri Company transferred its assets (except the certain assets not connected with the transfer business of a value of approximately $60,000) to the Delaware Company for 4,900 shares of the Delaware Company, which shares were issued directly to the stockholders of the Missouri Company in the same proportion as they held stock in the Missouri Company.

Later, during 1930, the Missouri Company, pursuant to the option agreement, changed its name to W. E. Geck, Incorporated, and thereafter and during 1930 caused to be incorporated under the laws of Missouri a corporation known as the C. T. Investment Company, and transferred to such newly organized company all of its assets not theretofore transferred to the Delaware Company of the value of approximately $60,000, and received therefor all of the stock of the C. T. Investment Company, which stock was issued to the stockholders of the Missouri Company in the same proportion as these stockholders held stock in the Missouri Company. Thereafter, and in 1930, the Missouri Company was dissolved. The officers and directors of the Missouri Company became officers and directors of the Delaware Company.

At a special meeting of the directors of the Delaware Company on July 3, 1930, a subscription for 5,100 shares of its stock

---

[1] An excerpt from the opinion of the Board of Tax Appeals reads as follows:

"The parties have agreed that the only issue to be decided in these proceedings is whether the transaction between the Missouri Company and the Delaware Company, as set forth in the foregoing findings of fact which we make herein, constituted a statutory reorganization within section 112 (b) (4), (i) (1) (B), (i) (2), (j), Revenue Act of 1928 [26 U. S.C.A. § 112 and note].

"The petitioner contends that the transactions herein are within the provisions of section 112, supra, the Missouri Company having transferred a part of its assets to the Delaware Company and immediately thereafter the stockholders of the Missouri Company were in control of the Delaware Company owning all the issued and outstanding stock of the Delaware Company."

by Trucking, Inc., a Delaware Corporation was presented and accepted by the following resolution: "Resolved that the Corporation accept the subscription of Trucking, Inc., for its 5100 unissued shares at an aggregate subscription price of $125,000.00 to be paid at the call of the Board of Directors, and that the consideration for each of the shares to be issued hereunder be fixed at $24.50."

From the Minutes of such meeting, it also appears that the original subscription for the ten qualifying shares of the Delaware Company's stock was canceled.

July 6, 1930, the Delaware Company notified the Missouri Company of the subscription by Trucking, Inc.

In October or November, 1930, Trucking, Inc., paid its subscription.

The Commissioner of Internal Revenue held that the transaction between the Missouri Company and the Delaware Company did not constitute a statutory reorganization.

The Board of Tax Appeals affirmed the Commissioner and appeal was taken to this court.

The petitioners claim on the present appeal that the transaction between the Missouri Company and the Delaware Company constituted a statutory reorganization.

The pertinent statutory provisions are set out in the margin.[2]

### Claims of Petitioners.

(a) Petitioners claim more specifically in this court that the Missouri Company meets the parenthesis definition in section 112 (i) (1) (A), 26 U.S.C.A. § 112 note, of reorganization because the Missouri Company acquired all of the issued and outstanding stock of the Delaware Company. Petitioners claim that the Missouri Company acquired this stock June 14, 1930, and that no other stock was issued until October, 1930.

(b) Petitioners claim that the transaction meets the definition at the close of section 112 (i) (1) (A) because the Delaware Company acquired substantially all of the properties of the Missouri Company, petitioners claiming that the words "substantially all of the properties" mean properties connected with the business as distinguished from assets of the Corporation.

(c) Petitioners claim that the transaction meets the definition in section 112 (i) (1) (B), 26 U.S.C.A. § 112 note, because the Missouri Company transferred part of its assets to the Delaware Company and immediately after the transfer the stockholders of the Missouri Company were in control of the Delaware Company and so remained until October, 1930.

We lay aside claim (b) of petitioners, first, because we do not think that $78,000 out of $138,000 can be held to constitute "substantially all of the properties" of the taxpayer; second, because we do not find that this point was raised before the Board of Tax Appeals, or that it received consideration by that Board.

The Board of Tax Appeals apparently considered that the claim of petitioners was based upon claim (c) above, for the syllabus of its decision reads: "Where the evidence fails to show that the organiza-

[2] Revenue Act of 1928:

"§ 112. *Recognition of gain or loss.*

"(a) *General rule.* Upon the sale or exchange of property the entire amount of the gain or loss determined under section 111, shall be recognized, except as hereinafter provided in this section.

"(b) * * * (4) * * * *Gain of corporation.* No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization. * * *

"(i) *Definition of Reorganization.* As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization or (D) a mere change in identity, form, or place of organization, however effected. * * *

"(j) *Definition of control.* As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation." 26 U.S.C.A. § 112 and note.

tion of a new corporation and the issuance of 4,900 shares of its stock to the stockholders of the old company, in consideration for the transfer of a part of the assets of the old company, were made in pursuance of a plan of reorganization and that the old company or its stockholders were, immediately after the transfer of its assets, in control of the new company, held, there was not a statutory reorganization within section 112 (b) (4), (i) (1) (B), (j) of the Revenue Act of 1928." And in its memorandum decision it says: "It follows therefore that since the transfer of assets and the exchange of stock involved herein was not made in pursuance of a plan of reorganization and the Missouri Company or its stockholders were not in control of the Delaware Company immediately after the transfer of the property involved, the determination of the respondent, that such exchange is taxable and not within the non-recognition provisions of section 112 of the 1928 Act, must be approved."

Let us examine the two contentions involved:

First, that the transfer of assets was not made pursuant to a plan of reorganization.

 We find nothing in the statute prescribing that the plan of reorganization must be in any particular form. It need not be reduced to writing. It may be amended as circumstances dictate. But when carried out, it must leave the transferor with an interest in the transferee, and this interest must be definite and material, and must represent a substantial part of the thing transferred; and if the reorganization is attempted under section 112 (i) (1) (B), 26 U.S.C.A. § 112 note (as both parties to the present appeal seem to think the reorganization in question was), then the transferring company or its stockholders must be immediately thereafter in control of the transferee company. This control need not be continuous. There is no need that the transferor company be dissolved. Helvering v. Minnesota Tea Company, 296 U.S. 378, 56 S.Ct. 269, 80 L. Ed. 284; John A. Nelson & Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281; G. & K. Mfg. Co. v. Helvering, 296 U.S. 389, 56 S.Ct. 276, 80 L.Ed. 291.

The uncontradicted testimony of Henry P. Duncker, president of the Missouri Company, read in connection with the option agreement set forth apparently at length in the opinion of the Board of Tax Appeals, and in connection with the stipulation of facts set out in the transcript, leaves no doubt that what was done was done pursuant to a plan. Whether what was done amounted to a reorganization depends upon the provisions of the statute.

This brings us to the second question: Whether the Missouri Company or its stockholders were in such control as is prescribed by the statute.

The Board of Tax Appeals thought that the Missouri Company was not in control of the Delaware Company because on July 3, 1930, the Delaware Company accepted a subscription for the remaining 5,100 shares of stock from Trucking, Inc.; but petitioners claim that the receiving of the subscription for shares of stock did not constitute Trucking, Inc., a stockholder because the Constitution of the State of Delaware provided that no stock shall be issued by a corporation until it has been paid for.

Section 3, article 9, of the Constitution of the State of Delaware reads as follows: "No corporation shall issue stock, except for money paid, labor done or personal property, or real estate or leases thereof actually acquired by such corporation."

If this provision of the Constitution of the State of Delaware were not sufficient in itself, we next turn to the action of the Missouri Company. The third paragraph of the option agreement reads as follows: "3. Upon the exercise of such option the Purchaser will, *at the election of the Seller,* cause 5,100 shares of its stock to be subscribed for at the aggregate subscription price of $125,000.00." (Italics ours.)

This seems to show conclusively that the Missouri Company was in control of the Delaware Company until October or November, 1930; for said testimony shows that Trucking, Inc., did not pay for the stock and become a stockholder until some time in October or November, 1930. From July 6, 1930, to October or November, 1930, therefore, the Missouri Company or its successor, the Geck Company, was in complete control of the Delaware Company; and so far as the record shows, the stockholders of the Geck Company may still control the Delaware Company.

Our conclusions are that there was a reorganization within section 112 (b) (4), (i) (1) (B), and (j) of the Revenue Act of

586

1928 (26 U.S.C.A. § 112 and note), and that the decision of the Board of Tax Appeals must be reversed.

It is so ordered.

WOODROUGH Circuit Judge (dissenting).

It appears that in 1930 the Central Transfer Company of Missouri sold out its business and a part of its assets at a profit, went into liquidation, and distributed the gain to its stockholders. They do not deny that there was a profit, nor that they got it. They resist paying a tax because they claim that the form the sale took worked a tax exemption for them.

The sale was effected between corporations and the form was not as simple as a sale over the counter in a grocery store, but the purpose and substance were no different. A corporation was organized under the laws of Delaware and a contract entered into in which the new corporation was called the purchaser and the Missouri Company the seller, and it was provided that the seller should transfer the property in question to the purchaser and receive a minority of the purchaser's stock (4,900 out of 10,000 shares) and the majority stockholders of the purchaser would obligate themselves to buy the minority shares on demand at $20 per share. All of which was done and the Missouri Company's stockholders received the minority stock of the new corporation and the majority stockholders became obligated, when called on, to buy it for $20 per share.

It is contended that in carrying out the plan the property of the seller was transferred to the purchaser and the minority stock was issued therefor a little while before the purchaser's majority stock was issued, and it is argued that the minority stockholders could have controlled the purchaser corporation in that interim. So that an exempt "reorganization" could be spelled out of that step of the sale transaction.

There was no evidence that the seller did transfer its property or get its minority stock before the majority stockholders of the purchaser got theirs, or that the new corporation ever functioned under the control of the minority stockholders,[3] but such incidents of consummating the deal, if they had been shown, would be immaterial. There was no idea to reorganize the Missouri Company into another company that would carry on the same business with the same stockholders, but with less than half the capital stock issued to them—that was not an end that anybody wanted to work out. The transaction as a whole was intended to be and was a sale that was intended to and did carry a profit to the seller. The component steps of the sale transaction should not be segregated and considered as though there were separate transactions. To try to do so merely distorts the picture of what the the deal was, upon which the minds of the parties met, and which netted the taxpayers' gains.

I see no reason to relieve these taxpayers from the common lot of fellow citizens who have to pay taxes when they sell their property at a profit.

---

[3] "The date of the actual transfer of such assets is not disclosed. Nor are we informed as to the date of the issuance of the 4,900 shares of the Delaware Company stock to the Missouri Company, * * *." "* * * the Missouri Company or its stockholders were not in control of the Delaware Company immediately after the transfer of the property involved. * * *" Opinion of the Board of Tax Appeals.

