**TEMPLETON'S JEWELERS, Inc., v. UNITED STATES.**

No. 45.

District Court, E. D. Tennessee, S. D.
March 30, 1940.

Fred M. Williams, of Chattanooga, Tenn., for plaintiff.

James B. Frazier, Jr., U. S. Dist. Atty., of Chattanooga, Tenn., and Mills Kitchin, Sp. Asst. to the Atty. Gen., for defendant.

DARR, District Judge.

The suit is brought for the recovery of corporation income and excess profit taxes which the plaintiff claims were wrongfully demanded and collected from it. The question presented is whether the plaintiff was a reorganization of a former corporation within the meaning of Section 112(i) (1) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 513.

There appears to be no serious dispute about the facts. Templeton's, Inc., a Tennessee corporation, was engaged in the retail jewelry business in the City of Chattanooga, and was in dire financial distress in the spring of 1932. By reason of this condition, on June 17, 1932, the Templeton's, Inc., executed to F. Carlton Wright, as assignee, what appears on its face to be a general assignment for the benefit of its creditors. The assignment instrument by its own terms announces that it was executed because of the financial difficulties of the plaintiff and in order to avoid threatened suits or involuntary bankruptcy.

There is no minute entry of Templeton's, Inc., authorizing the assignment or making any reference to a reorganization of the corporation. There is no intimation in the proof otherwise that at this time there was contemplated a reorganization, except that Ira F. Templeton, the dominant stockholder of this corporation, hoped that he could buy in the business.

From the date of the assignment to July 28, 1932, the jewelry store was operated at the same place by the same people, but under the supervision of the assignee. The assignee, with the active assistance of Ira F. Templeton, the dominant stockholder of Templeton's, Inc., who subsequently became a dominant stockholder in the plaintiff, secured an agreement from 90 per cent. of the creditors of Templeton's, Inc., to settle their claims for an amount equal to 25 per cent. thereof. When this was

done the assignment paper became a consumated instrument under its own terms.

Thereupon, and on the date last mentioned, an effort was made to comply with the Bulk Sales Law of the State of Tennessee, Code 1932, §§ 7283–7285, by sending out notices of sale to those creditors of Templeton's, Inc., who had not agreed to except partial payment for their claims. This notice was signed by the assignee and Templeton's, Inc., but not by the purchaser.

The amount necessary to pay off the creditors who had agreed to take 25 per cent. of their respective claims was $6,250. This amount was secured by Ira F. Templeton.

Pursuant to the time set in said notices the assignor sold the assets of Templeton's, Inc., to G. Royal Neese. So far as I can gather this sale was made for the sum of $6,250. At some time in the proceedings, Ira F. Templeton had agreed to pay off the balance of the creditor of Templeton's, Inc., in full. Just when this was done as to the several items does not appear to be plain. However, it would seem that such was finally accomplished after the date the assignee sent out the notices in an effort to comply with the Bulk Sales Law of Tennessee. If such has been done before this date, the sending out of the notices would have been entirely unnecessary.

G. Royal Neese was acting as an agent or trustee for Ira F. Templeton, or for Templeton's Jewelers, Inc. At this time, it appears that Mr. Templeton had organized or intended to organize the new corporation. Mr. Templeton says the reason why he secured Mr. Neese to act for him was that he had personal obligations and did not want the assets to be in his name personally, as trustee or otherwise.

On or about the same time G. Royal Neese, as disclosed by a minute entry of Templeton's Jewelers, Inc., the new corporation, for a consideration of 160 shares of stock in said corporation, transferred to the corporation all the assets purchased from the said assignee formerly belonging to Templeton's, Inc. The stock had a par value of $100. Stock was issued to certain employees of Templeton's, Inc., in payment of wages owed them by the old corporation. The balance of the stock was owned by Mr. Templeton, same being 146¾ shares.

In reality the new corporation paid for the assets of the old corporation the sum of $13,854.41, representing the outstanding indebtedness of the old corporation which was to be paid in full the amount of $7,604.41, and the amount of $6,250 paid in the sale made by the assignee. While the amount of the indebtedness of the old corporation was only $7,604.41, Mr. Templeton advanced $6,250 which he now claims is owing to him from the new corporation. Of the debts assumed, $1,424.93 represented unpaid wages to employees of Templeton's, Inc. This was paid by the issuance of stock in the new corporation to the employees.

The taxes involved are for the fiscal years ending July 31, 1933, and July 31, 1934. The Commissioner of Internal Revenue assessed and collected taxes on a cost basis to plaintiff of $13,854.41, whereas the plaintiff contends that the cost basis of these assets should be $48,483.18, being the book value of the assets of Templeton's, Inc.

The statute involved is the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 482 et seq., particularly that part of said act at Section 21, Section 22, Section 112(i) (1), and Section 113(a) (7).

But there is only one part of the statute to be construed in applying the uncontroverted facts thereto, and that is that part of Section 112(i) (1) which provides: "The term 'reorganization' means * * * the acquisition by one corporation of * * * substantially all the properties of another corporation * * *".

A reorganization of a corporation contemplates a reconstruction or a rehabilitation. If title to the assets of the property of a corporation passes from the corporation, then there is nothing left to reconstruct or rehabilitate. So the question in this case is whether or not the title to the assets of Templeton's, Inc., passed from it to a third party and not from it to Templeton's Jeweler's, Inc., the new corporation. In other words, whether there is a continuity in interest flowing from the old corporation to the new corporation.

I think the first material question to be determined is whether or not the paper proporting to be a general assignment is such general assignment for the benefit of creditors or is of the nature of an instrument creating a lien.

448

■ It is not a general assignment for the benefit of creditors under the laws of the State of Tennessee for the reason that it has no sworn statement of inventory attached thereto.

■ I think unquestionably it is a good common-law assignment binding on the parties of interest, including the plaintiff, provided it meets the terms required in such assignment. It does provide that it will become effective if two-thirds of the creditors of Templeton's, Inc., agree thereto. If the question had been raised, this might have been considered a special assignment. But the question was not raised and all parties of interest have treated it as a general assignment. The sale was made thereunder and title to the property passed to the purchaser and was held without controversy. It included all the assets of the assignor and all the creditors were satisfied. Under these conditions I think that the instrument is a general assignment for the benefit of the creditors.

■ A general assignment for the benefit of creditors passes both the legal and equitable title to the property absolutely beyond the control of the assignor. After the assignment becomes effective by agreement with the creditors, the assignor has no further right or control over the property. His only interest would be in any revenue that might be left after the payment of debts. Evidently the assignee, as well as the assignor, thought that the title was passing into new hands by reason of the effort to comply with the Bulk Sales Law of Tennessee.

■ There is quite a distinction between an assignment for the benefit of creditors and a mortgage or trust deed or other lien creating instruments or liquidation by judicial proceedings. The former appropriates without reservation all property for the payment of debts, while the latter puts up property as security for the payment of debts, there being an equity remaining in the transferor. The former conveys absolute title while the latter does not.

It follows that if the other elements of reorganization are met, as was done in this case, and a rehabilitation or reconstruction effective by purchase in foreclosure proceedings under mortgage or trust deed or judicial sale, then there is a continuity of interest and there is a reorganization. But if it so happens that the purchasers from an assignee are the same persons in interest to the old corporation and if the elements of reorganization are met in this respect, there is no reorganization for the reason that there is no continuity of interest or title.

I can find no authority discussing a proposed reorganization where there has been a general assignment for the benefit of creditors. All the cases found involved a judicial proceeding, in some of which it is stated that there could be a voluntary sale whereby there would be a reorganization. In all the cases the title had not passed from the old corporation and those in interest thereto to a third person, but passed from the old corporation and those in interest thereto to the new corporation.

■ For the reasons stated, I am of the opinion that Templeton's Jewelry, Inc., bought the assets involved and is not a reorganization of Templeton's, Inc.

Judgment is awarded the defendant.