## In re FULLER CLEANING & DYEING CO.

### PRIOR et al. v. DAUS et al.

No. 8724.

Circuit Court of Appeals, Sixth Circuit.

April 10, 1941.

Dorr E. Warner, of Cleveland, Ohio, for appellants.

Robert I. Kopper, of Cleveland, Ohio (Benesch, Marsteller, Friedlander & Morris, Miller, Daus & Schwenger, and Robert I. Kopper, all of Cleveland, Ohio, on the brief), for appellees.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Appeal by a Committee of Depositing Bondholders, herein called the Prior Committee, and Prior and Hitz, individual owners of deposited bonds, of the Fuller Cleaning & Dyeing Company, from a decree of the District Court confirming a plan of reorganization of the corporation under Sec. 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

Two questions are presented: (1) whether the plan discriminates unfairly against depositing bondholders; and (2) whether the acceptances of the requisite number of nondepositing bondholders were obtained in good faith.

The Special Master and the Court concurred in finding that the plan itself was fair, equitable and feasible and we see no reason for holding otherwise. It was before the Court for a long period of time, received careful consideration and underwent various amendments. There is no sufficient showing of clear mistake.

The second question is a more serious one. The Master regarded it as "very challenging," as do we.

Mr. Bryan, President of the debtor, who had been a stockholder and Vice-President for twelve years, was to put $35,000 of new money into the reorganized company and become its principal stockholder. Mr. Hinchcliffe, the Secretary of the debtor, had been its General Manager for more than ten years and expected to be connected with the reorganized company. Mr. Barrick was a member of the Daus Bondholders Protective Committee, herein called the Daus Committee, appellee. These three men were interested in having the plan confirmed.

The bondholding creditors of the debtor were divided into two classes, those who had deposited their bonds, and those who had not. It was necessary, both under the statute, Bankruptcy Act, Ch. X, Art. VII, Sec. 179, 11 U.S.C.A. § 579, and under the

order of the Court, that the plan be accepted in writing by two-thirds in amount of the claims of the nondepositing bondholders filed and allowed. The last day for filing such acceptances was November 27, 1939, otherwise the debtor's property would be subject to liquidation. There was a total of $31,600 of undeposited bonds, $28,000 of which were filed and allowed. It was necessary, therefore, to obtain acceptances from this class to the amount of $18,667, whereas only $14,000 in amount had been accepted. Appellees and those interested with them were faced with the failure of the plan unless there were additional acceptances of at least $4,667. "As the deadline approached," the proponents of the plan, the Daus Committee, brought the situation to the attention of the District Court.

The Cleveland Trust Company, Trustee for the Estate of Theresa Bing, owned $5,000 in amount of nondeposited bonds and Charles W. Wild owned a like amount. It was necessary that acceptances be acquired from one or both of these parties.

The Master states that appellees proposed to the Court that the Bing and Wild bonds be purchased at 90 cents on the dollar. The narrative of evidence found in the record is, that the Court was informed that interested parties were willing to advance personally, out of their own private cash, moneys sufficient to satisfy the holders of prior lien bonds, if such a procedure were proper. The evidence substantially supports the statement of the Master; and the Court approved the procedure upon the promise of appellees that they would notify all other nondepositing bondholders that they were so doing and give them an opportunity to withdraw their acceptance if they desired to do so.

Following the Court's approval, appellees gave notice to nondepositing bondholders in the form of a letter, to wit: "This is to advise you that Mr. Ralph Barrick, a member of this committee has purchased $5,000.00 face value of undeposited bonds in order to be able to vote them for the plan of reorganization recently approved by Federal Judge Jones. If you feel this in any way prejudices you, you may withdraw the consent which you have filed to the plan by notifying George Harris, Special Master."

What actually took place was something entirely different.

As found by the Master, the Bing interest and Wild had refused to accept the plan unless they received 90 cents on the dollar for their bonds, whereupon Bryan, Hinchcliffe and Barrick acting through appellee, the Daus Committee and its counsel, proposed to the representatives of Bing and Wild that, contributing $1,500 each, they would buy $2,500 face value of the Bing bonds and a similar amount of the Wild bonds, provided the plan was confirmed; but if it was not confirmed, the sale would fall through. The proposed purchase money, $4,500, was put *in escrow* and as a result the holders of the Bing and Wild bonds, $10,000 face value, consented to the acceptance of the plan. This made a total vote in the nondepositing class of bonds of $24,000 for acceptance, or 85.7% and the plan was confirmed.

We think the confirmation was void.

Sec. 77B, subdivision f, provides, "The judge shall confirm the plan if satisfied that * * * (6) the offer of the plan *and its acceptance are in good faith* and have not been made or procured by any means or promises forbidden by this title." (Italics ours.)

The transaction lacks the commonly accepted elements of good faith. The Bing and Wild acceptances were not voluntary. It is clear enough that they were procured for a consideration. The promises made to the Court were not kept. The letter to the nondepositing bondholders was misleading. No one made himself eligible to vote for acceptance by the unconditional purchase of any bonds. Barrick had not made an absolute purchase of any bonds, and did not qualify himself to vote for the plan. No one seems to have thought it necessary to notify any depositing bondholder of what was taking place. If appellees found themselves unable to carry out instructions of the Court, it was their duty to so report and seek other instructions. They could not disregard the rulings or disobey the instructions.

■ It is a maxim of equity adjudication that "no one can take advantage of his own wrong"; and the Bankruptcy Court is a court of equity. To permit one to profit by his own wrongdoing is to extend an open invitation to wrongdoing. Equity abhors such conduct.

The decree confirming the plan is set aside and the case reversed for further proceedings consistent herewith.