## MASCOT STOVE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8595.

Circuit Court of Appeals, Sixth Circuit.

June 3, 1941.

Robert A. Littleton, of Washington, D. C., for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Harry Marselli, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

Review is sought of an order determining a deficiency asserted by the respondent against the petitioner for the fiscal year ending June 30, 1934, and raises the question whether the purchase by the petitioner of all of the assets of a bankrupt corporation of the same name from its trustee in bankruptcy, was in effectuation of a reorganization of the old company within the meaning of § 112(b) (3) and (g) (1) of the Revenue Act of 1934, 26 U.S.C. A. Int.Rev.Acts, pages 692, 695. If the petitioner's purchase of the assets of the old company was in pursuance of a reorganization, the basis for ascertaining gain or loss upon the sale of the assets is the same as the basis for its assets while owned by the bankrupt corporation and there was no tax deficiency. If, however, a reorganization of the old company is not to be recognized, the basis for ascertaining gain or loss is limited to the price paid at the bankruptcy sale as held by the Board of Tax Appeals.

The original company was adjudicated a bankrupt upon an involuntary petition in June, 1933. Its real estate, machinery, tools, equipment and goodwill, were encumbered by a mortgage upon which including unpaid interest and taxes, more than $30,000 was due, a sum substantially in excess of the value put upon the property by appraisal in the bankruptcy proceedings. Its inventory of castings, stoves, parts and materials, and an equity in accounts receivable which were subject to a finance company's lien, constituted the remainder of its assets, appraised at $9,280.-50. The record is silent as to the amount of the unsecured indebtedness of the bankrupt, but the petition recites that the bankrupt owed debts to general creditors which could not be paid in full.

The facts upon which the petitioner relies in support of its contention that there was a reorganization are: that the stockholders of the bankrupt company entered into a plan among themselves, and with the

trustee in bankruptcy and secured creditors, to perfect a reorganization by organizing a new corporation under the laws of Tennessee to acquire the assets of the old company by the payment of $7,500 in cash to the trustee in bankruptcy for distribution among its general creditors, the assumption of its secured debts by the new corporation and the issuance of common stock by the latter to the former stockholders of the old company as consideration for the transfer of all of its assets and properties; that this plan of reorganization was carried out by the appointment of one Ziegler to act as trustee for a group of the stockholders; that Ziegler purchased the assets from the trustee in bankruptcy; that the price was satisfactory to the referee and to the general creditors; and that promptly thereafter the new corporation was organized, all of the assets of the old transferred to it by Ziegler, the new company assuming the secured indebtedness of the old company, and each stockholder of the old company being entitled to receive shares in the new company in the ratio of his stock holding in the old. The cost basis of all of the properties of the old company amounted in the aggregate to $107,293.26. The respondent fixed the basis of the properties to accord with the amount paid to the trustee in bankruptcy by Ziegler allocated as between inventory and accounts receivable, and asserted a deficiency computed upon realizations during the tax year in excess of such allocations. The petitioner asserts this determination to be erroneous, and as an alternative, not here pressed, urged upon the Board a cost basis equivalent to an asserted fair market value of the assets at the time of their acquisition.

■ The Board found that Ziegler acquired the property of the bankrupt as trustee and agent for its stockholders in pursuance of a plan by which the latter proposed to organize a new corporation to acquire the assets of the old company and continue its business. The petitioner urges that this finding compels the legal conclusion that it is a corporation resulting from a reorganization. It points to the definition of reorganization in § 112(i) (1) and (2) of the applicable Revenue Act, 26 U. S.C.A. Int.Rev.Acts, page 513, as comprehending mergers or consolidations which include the acquisition by one corporation of substantially all the properties of another corporation, and a transfer by one corporation of all or part of its assets to another if immediately after the transfer the stockholders of the transferor are in control of the transferee. This assumes, however, that the interest acquired by the old stockholders in the new company was based upon either a legal or economic interest in the assets of the old corporation, the transfer of which to the new company effectuates a continuity in the life of the same economic entity, so as to bridge the gap created by bankruptcy adjudication and sale of assets. It has generally been thought that the continuity of interest referred to in the cases means that either the transferor corporation or its stockholders receive an interest in the acquiring corporation by reason of, or in exchange for their interest in the transferor.

■ In Pinellas Ice Co. v. Com'r, 287 U.S. 462, 470, 53 S.Ct. 257, 260, 77 L.Ed. 428, it was said that the words of the parenthetical clause in § 112(i) (1) which included within the definition of reorganization the acquisition by one corporation of substantially all the properties of another corporation, expanded the meaning of merger or consolidation beyond what was ordinarily and commonly accepted "so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation." To which the Supreme Court added in Helvering v. Minnesota Tea Co., 296 U.S. 378, 385, 56 S.Ct. 269, 272, 80 L.Ed. 284, "this interest must be definite and material; it must represent a substantial part of the value of the thing transferred." So it was there held that the transaction in question was not a mere sale for cash by one corporation of its assets to another, but partook of the nature of a reorganization in that the seller acquired a definite and substantial interest in the purchase.

■ The difficulty we find in giving assent to the petitioner's contention, is that the transferor corporation here received nothing from the transferee. It is true that the old stockholders were permitted to become stockholders in the new company, but by virtue of the adjudication in bankruptcy the old stockholders had nothing to transfer, and the old company being insolvent and unable to pay its debts, neither it nor its stockholders could receive anything. There was, therefore, no exchange of stock for stock, or property for stock, and the interest the stockholders acquired in the new company was not, either

in legal contemplation or as an economic concept, an acquisition in exchange for their stock in the old company, or by virtue of their ownership of it.

Ziegler bought the assets of the bankrupt not from the bankrupt corporation nor from its stockholders, but from the trustee in bankruptcy, and the avails of the sale went not to the corporation or its stockholders, but to creditors. It may be, as urged by the petitioner, that a trustee in bankruptcy is a fiduciary of the stockholders of a bankrupt corporation as well as of its creditors, but the interests of the creditors are primary, and except in the rare case where assets upon realization, produce more than enough to pay creditors in full, with surplus left over for stockholders, the fiduciary relationship of the trustee to the corporation and its stockholders remains a mere abstraction, its obligations dormant, and the corpus of the trust, nonexistent.

While reorganization under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, is not here involved, we must note that it broadens the reorganization concept beyond that prevailing when the taxing statute was enacted, yet in interpreting its provisions the Supreme Court applied what it deemed to be "the 'fixed principle'" of Northern Pacific R. R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, reaffirmed in Kansas City Terminal Ry. Co. v. Central Union Trust Co., 271 U.S. 445, 46 S.Ct. 549, 70 L.Ed. 1028, that "to the extent of their debts creditors are entitled to priority over stockholders against all the property of an insolvent corporation." Case v. Los Angeles Lumber Co., 308 U.S. 106, 116, 60 S.Ct. 1, 7, 8, 84 L.Ed. 110. So a plan to exchange, for shares in a new company relieved of old debts, the stock of an insolvent bankrupt corporation, stripped of its assets by a sale yielding less than its debts, could not, we think, have been in the contemplation of the Congress, a tax-free reorganization, when a like plan fails to respond to the "fair and equitable" test of the liberal reorganization amendment.

It may be, though this we do not decide, that in executing a plan for reorganization the mechanics of bankruptcy might be employed without destroying that continuity in the existence of the economic entity so as to place it without the saving clause of the taxing statute, but upon the facts of the present case we do not think they were so employed. The new corporation obtained all the property of the old, but when acquired it was freed from the claims of unsecured creditors, and a new and more valuable corporate estate came into existence and into the possession of the new company. In this respect the present case differs from Rex Mfg. Co. v. Com'r of Int. Rev., 7 Cir., 102 F.2d 325, where a reorganization plan was perfected and carried out through the medium of a bankruptcy sale and the purchase by a nominee of the stockholders of the bankrupt's property thereafter conveyed to the newly formed company. But there the resemblance ends. Creditors of the old company were paid 25% in cash and 75% in bonds of the new company. The debts of the bankrupt being recognized in full, the equity if any belonged to the transferor. It had something to transfer. In the present case the bankruptcy proceeded to liquidation and liquidation is the antithesis of reorganization. A gain was realized by the new company in the collection of book accounts and sale of inventory. This was in no sense a return of capital to the stockholders whose interest in the old company had disappeared. It was a gain of the new company and, if not subject to assessment in the present proceeding, would escape taxation. We do not regard Rex Mfg. Co. v. Com'r, supra, as in conflict, but if it is thought to be inconsistent with our conclusions we decline to follow it.

The continuity so strongly urged upon us in view of the fact that the bankruptcy was in pursuance of a plan agreed upon among the stockholders, their trustee, and secured creditors, does not persuade us that the transaction was a tax free reorganization within the terms of the statute. As was said in Case v. Los Angeles Lumber Co., supra, "once the property is in the hands of the court private rights as respect that res are subject to the superior dominion of the court and are to be adjudicated pursuant to the standards prescribed by the Congress." The insolvency of the old company, its adjudication as a bankrupt, and the sale of all of its assets for less than its debts, put a period to its existence. The new company was a separate enterprise and its realized gains are taxable.

The decision of the Board of Tax Appeals is affirmed.