**TEMPLETON'S JEWELERS, Inc., v.
UNITED STATES.**

No. 8713.

Circuit Court of Appeals, Sixth Circuit.

March 4, 1942.

Fred M. Williams, of Chattanooga, Tenn., for appellant.

Samuel H. Levy, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., and J. B. Frazier, Jr., of Chattanooga, Tenn., on the brief), for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant sought to recover income and excess profits taxes paid by it for the fiscal years ending July 31, 1933 and July 31, 1934, on the ground that its acquisition of the assets of a predecessor corporation from an assignee for the benefit of creditors, was in pursuance of a plan of reorganization, by reason of which the basis for computing gains was the cost of the property to its predecessor rather than the price paid to the assignee. The District Court rejected this view and gave judgment for the defendant, D.C.Tenn., 32 F.Supp. 445.

The appellant acquired all of the assets formerly belonging to Templeton's, Inc., of which Ira F. Templeton was the president and the majority stockholder. Templeton's, Inc., was engaged in the retail jewelry business in Chattanooga, Tennessee, and beginning in 1930 suffered a severe business decline with the result that its affairs reached a situation where it was unable to meet its obligations. In order to avoid involuntary bankruptcy, and to protect its creditors, it made an assignment in 1932 of all of its property, to a trustee for the benefit of creditors. Templeton continued to operate the business for six weeks under the supervision of the assignee, at the end of which time the assignee made an agreement with 90% of the creditors, to settle their claims for 25 cents on the dollar. Ten % of the creditors refusing to accept, an abortive effort was made to sell the business and properties under the Bulk Sales Law of Tennessee, Code Tenn.1932, § 7283 et seq. Templeton later borrowed sufficient money to complete the settlement with creditors; acquired from the assignee through a trustee, the assets of the corporation, and transferred them to a new corporation. An agreement was made with the non-consenting creditors, that the new corporation, Templeton's Jewelers, Inc., should assume the debts of the old corporation to them, and the appellant likewise satisfied employee claimants of the old company by the issue to them of 13¾ shares of its capital stock.

The Revenue Act of 1932, § 112(i) (1), 26 U.S.C.A. Int.Rev.Acts, page 513, defines the term "reorganization" to mean: "(A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected."

The appellant contends that Templeton planned to reorganize the business of the old company and acquire its assets for the purpose of organizing a new corporation and continuing the business of the old; that this was done through the mechanics of assignment rather than bankruptcy; that immediately after the transfer of the properties, more than 50% of the stock of the new company was issued to him, and that the transaction fell within the "A" portion of the statutory definition of reorganization, being the acquisition by one corporation of substantially all the properties of another; that it likewise fell within the "B" portion, being a transfer by a corporation of all its assets to another corporation, with the stockholders of the transferor immediately thereafter in control of the transferee; and also that there was a recapitalization within part "C" of the definition.

In Mascot Stove Co. v. Com'r of Int. Rev., 6 Cir., 120 F.2d 153, we held that where an insolvent corporation had been adjudicated in bankruptcy and its assets sold to satisfy creditors, and the avails of the sale were not sufficient to pay the corporation's debts, neither the corporation nor its stockholders had anything of value to transfer to a new corporation, and that such transaction, even though contemplated in advance as a means of reorganization, failed to qualify as such under the terms of the statute. The Mascot Stove Company case being before the Supreme Court on a petition by the unsuccessful taxpayer, for a writ of certiorari, decision here was withheld pending action upon the petition. The writ has now been denied, 62 S.Ct. 630, 86 L.Ed. ——.

We pointed out in our opinion that based upon the interpretation of § 112(i) (1) in Pinellas Ice & Cold Storage Co. v. Com'r, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, and Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284, the mere transfer of all of its

assets by one corporation to another did not effect a reorganization unless the interest of the transferor, or its stockholders, represented a substantial part of the value of the thing transferred; that either the corporation or its stockholders must have something of value to exchange for the stock of the new company; and that a plan to exchange for shares in a new company relieved of old debts, the stock of an insolvent bankrupt corporation, stripped of its assets by a sale yielding less than its debts, was not a tax free reorganization. The principles there applied are applicable here.

While in the present case there was no adjudication in bankruptcy and no sale under the supervision of the Bankruptcy Court, the result is identical. The appellant itself accurately characterizes the plan: "By reason of this condition on June 17, 1932, in order to save the cost of administration incident to bankruptcy, and at the same time afford it (the corporation) the same relief that bankruptcy affords, to-wit: the getting a full discharge from its obligations by way of an assignment of its assets to a trustee for the purpose of liquidation and disposition among its creditors in lieu of bankruptcy—execute an agreement, etc." The old corporation was liquidated. This is clear not only from the concession, but from the circumstances as developed below, and as we said in the Mascot case [120 F.2d 156], "liquidation is the antithesis of reorganization."

The appellant leans heavily upon our decision in Com'r of Int. Rev. v. Newberry Lumber & Chemical Co., 6 Cir., 94 F.2d 447, but in that case it was the proprietary interest of the security holders of the old company as such, that was perpetuated in the new company. Here 90% of the creditors were eliminated by the settlement made with new capital, and the remaining 10%, except for labor claimants in negligible amount, acquired no proprietary interest in the new corporation. That the distinction is vital appears from the recent decisions of the Supreme Court. In Helvering v. Alabama Asphaltic Limestone Co., 62 S.Ct. 540, 543, 86 L.Ed. ——, decided February 2, 1942, the court, after pointing out that from the Pinellas case, supra, to the LeTulle case, LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355, it has been recognized that a transaction may not qualify as a reorganization even though the literal language of the statute is satisfied because the "continuity of interest" theory introduced in the Pinellas case eliminates transactions which have no real semblance to mergers or consolidations, holds that there is no reorganization when the old stockholders are eliminated and no portion, whatever, of their proprietary interest in the old corporation is preserved for them in the new. This is a situation differing from that disclosed in Palm Springs Holding Corp. v. Com'r, 62 S.Ct. 544, 86 L.Ed. ——, decided the same day. There the new corporation acquired the assets at the trustee's and the foreclosure sales, but the critical facts were that the creditors took command over the property and accordingly the continuity of interest test was satisfied. There were no such critical circumstances here.

In passing, it is well to observe that it is wholly beside the point that the general assignment for benefit of creditors made by the old company, failed to conform to the provisions of Tennessee law. Only its creditors could complain, and they are not here. Certainly, the appellant neither may, nor does, assail its own title to the assets of the old corporation. The latter assigned its property to a trustee for creditors, and it was beyond its power to exchange it for stock in the new company.

In the Mascot case we conceded that our decision might be thought to be in conflict with that in Rex Mfg. Co. v. Com'r, 7 Cir., 102 F.2d 325, although we did not so regard it. It must now be observed that the Court of Appeals of the Seventh Circuit perceives the same distinguishing features noted by us. D. W. Klein Co. v. Com'r, 123 F.2d 871. In its later decision it was pointed out that in the Rex case all creditors received bonds in the new corporation, secured by assets delivered to it by the old, pursuant to plan, but that in the case at bar there was no carrying over of claims of creditors or stockholders,—the assets were sold to the highest bidder. That, substantially, is the Mascot case, and that, in principle, is the present case.

The decree below is affirmed.