## ADWOOD CORP. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11318.

United States Court of Appeals
Sixth Circuit.

Dec. 23, 1952.

Jackson L. Boughner, Chicago, Ill., Tenney, Sherman, Rogers & Guthrie and Meyer Field and Field & Daniels, all of Chicago, Ill., on brief, for petitioner.

L. W. Post, Washington, D. C., Ellis N. Slack and Lee A. Jackson, Washington, D. C., on brief, for respondent.

Before SIMONS, Chief Judge, and Mc-ALLISTER and MILLER, Circuit Judges.

SIMONS, Chief Judge.

This review involves deficiencies in taxes for the fiscal years ending May 31, 1942, 1943 and 1944. They grow out of a challenged determination by the Commissioner that the basis for depreciation of property was the sum paid by petitioner at foreclosure sale and not its cost to an earlier corporation, because the petitioner did not obtain the property in pursuance of a reorganization under the provisions of § 112 (b) (3), § 112(g) (1) (C) and § 112(b) (5), of the Internal Revenue Code, 26 U.S. C.A. § 112(b) (3, 5) (g) (1) (C).

Harry L. Pierson and Harriet P. Taylor, hereafter called Piersons, owned property in Detroit leased for ninety-nine years to Ray Spitzley and Paul L. Kamper, the lessees agreeing to erect a hotel building thereon. The lease provided that upon default, the Piersons could, after proper notice and the lapse of three months, declare the lease terminated and take possession, in which case all improvements on the premises were to belong to them. On October 20, 1925, the lessees assigned to a corporation known as the Savoy Hotel Company.

The Savoy Hotel Company and the Piersons subsequently executed a trust indenture to secure first mortgage bonds in the principal sum of $1,450,000.00. That instrument provided in Art. VI, § 1 that upon default in carrying out the terms of the mortgage the trustee could by a 30-day notice to Savoy and the Piersons declare the principal of the mortgage due immediately.

In April 1929, Savoy was in financial difficulties and unable to pay its rent and on June 12, 1929 the Piersons served upon it a notice to quit. On July 1, 1929, the Piersons entered into an agreement with Savoy and Emily K. Kamper by which the Piersons waived all past rent due and all rent for the remainder of 1929 but that they could take possession in case Savoy failed to pay the trustee interest falling due after July 1, 1929. Savoy failed to make the required payments and on December 13, 1929 the trustee served notice upon it, in accordance with § 7, Art. VI of the trust indenture, stating an intention to declare all principal due immediately, to take possession and to foreclose the mortgage. The Piersons served a 7-day notice to quit on Savoy on December 26, 1929, and took possession of the premises on January 6, 1930.

Savoy immediately brought suit in the State Court asking for restoration of possession. The Piersons replied by cross-bill, requesting that the lease be decreed to be lawfully canceled and terminated and on February 3, 1930 the court entered its decree, after filing an opinion, declaring the Piersons' entry peaceable and in accordance with the provisions of the agreement of July 1, 1929; that by such entry the Piersons acquired the right of possession for defaults which had occurred, but since the lease contemplated a 90-day delay after default, and its provisions remained in force and effect, that confirmation of the Piersons in their title would be granted subject to the right of Savoy to reinstate itself within a period of 90 days from the 26th day of December,

1929. Savoy failed to cure the default and reinstate the lease within the 90-day period allowed by the decree, and the confirmation of title in the Piersons, subject to the mortgage, thus became effective.

A committee of bondholders was then formed which began negotiations with the Piersons concerning a possible reorganization. On May 20, 1930, the trustee served notice on Savoy and the Piersons declaring the principal of all bonds payable immediately and began foreclosure proceedings in June, 1930. A decree was entered on October 26, 1931 authorizing a sale of the premises forthwith unless the debt was paid. No adequate bid was received and there was no sale until June 11, 1941. Meanwhile, the property was operated first by the Piersons, later by the trustee, and still later by a hotel management company, and the trustee and the Piersons advanced large sums for taxes and operating expenses which became liens on the mortgaged premises prior to the lien of the first mortgage.

It was not until ten years after foreclosure that a plan of organization was developed by the bondholders' committee, in conjunction with the Piersons and the trustee, approved by the Public Trust Commission, April 18, 1941. It provided for the incorporation of the petitioner which was to purchase the property at a foreclosure sale for the benefit of the bondholders. The trustee agreed to accept $110,000.00 in settlement of its advances and to surrender for cancellation $50,000.00 face amount of first mortgage bonds which it owned and the Piersons were to accept in satisfaction of their advances $65,000.00 and 27,000 shares of petitioner's stock. The plan provided that if the petitioner was the successful bidder, it would acquire the property subject to the liens of the Piersons and the Detroit Trust Company. This was because the plan could not be completed until the six-months' period of redemption expired. The petitioner was to borrow $200,000.00 on a first mortgage on the property and was to use the proceeds to make the payments to the Detroit Trust Company and the Piersons.

A deed to the hotel property was delivered to the petitioner on December 11, 1941 upon expiration of the statutory period of redemption. The petitioner borrowed $200,000.00 on mortgage, paid the Trust Company and the Piersons. The holders of $6,500 of the total bonds outstanding objecting to the plan were paid in cash. The petitioner upon completion of the plan had outstanding 172,000 shares, 135,800 of which were issuable to the depositing bondholders and 27,000 to the Piersons.

The Commissioner held that the transaction whereby the petitioner acquired the hotel property did not come within the provisions of the Internal Revenue Code, above cited; that the basis of the property to the Petitioner was the $400,000.00 paid for it at the foreclosure sale, of which he allocated $290,000.00 to buildings and allowed depreciation thereon upon the useful life of 33⅓ years from June 11, 1941.

The petitioner contends that it is entitled to use the basis of Savoy for the purpose of computing depreciation, in view of § 113(a) (7), 26 U.S.C.A. § 113(a) (7), which provides that if property is acquired by a corporation in connection with a reorganization then the basis shall be the same as it would be in the hands of the transferor. But § 112(g) (1) (C) provides that a reorganization means "the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded". The petitioner contends that this section applies and gives to it the basis which the property had in the hands of Savoy.

Savoy, however, lost every interest which it had in the building in 1930 when the lease was terminated by order of the Michigan court. It did not sell or exchange its property, its loss was not from a sale or exchange, and no reorganization of Savoy took place.

The petitioner argues, however, that all of this is not material. It relies principally on Helvering v. Alabama Asphaltic Limestone Company, 315 U.S. 179, 62 S.Ct. 540,

543, 86 L.Ed. 775. In that case, pursuant to a plan agreed to by practically all of its noteholders, a defaulting corporation was put into bankruptcy by the filing of an involuntary petition. Of this, the Court said: "For practical purposes, however, it (transfer of ownership) took place not later than the time when the creditors took steps to enforce their demands against their insolvent debtor. * * * that was the date of the institution of bankruptcy proceedings." It also said, "When the equity owners are excluded and the old creditors become the stockholders of the new corporation, it conforms to realities to date their equity ownership from the time when they invoke the processes of the law to enforce their rights of full priority. At that time they stepped into the shoes of the old stockholders. * * * The mere possibility of a proprietary interest is of course not its equivalent."

In the instant case, however, nothing was done by the creditors to invoke "the processes of the law" to enforce their rights prior to the confirmation of title to the property in the Piersons by a decree of the State court and the default of Savoy. The appellant undertakes to spell out such step from the notice of intention given to it and the Piersons by the trustee on December 13, 1929, before title was confirmed in the Piersons. This notice did nothing but declare an intention to take possession and to foreclose. It did not give the trustee for the bondholders possession and control of the property and before its intention was or could be effectuated the Piersons became owners subject to the mortgage. This is not the situation adjudicated in Helvering v. Alabama, supra. "Once the property is in the hands of the court private rights as respect that res are subject to the superior dominion of the court * * *." Case v. Los Angeles Lumber Co., 308 U.S. 106, 116, 125, 60 S.Ct. 1, 12, 84 L.Ed. 110; Mascot Stove Company v. Commissioner, 6 Cir., 120 F.2d 153. Here, the processes of the law were not invoked nor could they be. The trust agreement provides, Art. VI, § 7, "in case the Owners elect to and do remedy and remove such default or defaults within the above period of 30 days, or within such further period of grace as may be allowed them by the terms of this mortgage, or otherwise, then, in such case, the principal of any bonds secured thereby then outstanding shall not be declared to be due and payable in advance of their maturity, * * * nor shall any other action be taken for the enforcement of this mortgage because of such default or defaults."

At the time the bondholders, through their trustee, invoked the processes of the law through foreclosure proceedings, the ownership of the equity in the hotel property was not in Savoy but in the Piersons. The case is, therefore, one within the doctrine of Bondholders' Committee, Marlborough Investment Company v. Commissioner, 315 U.S. 189, 62 S.Ct. 537, 86 L.Ed. 784. There, while foreclosure proceedings were pending, the issuing corporation had deeded the property to others. Here, Savoy, even before foreclosure proceedings were pending, had lost its title through cancellation of its lease and by operation of law in the state court confirming title in the Piersons. The Piersons were individuals and not a corporation. Warwick Hotel, Inc. v. United States, D. C., 69 F.Supp. 242, affirmed 5 Cir., 158 F.2d 961, is not contra. It is distinguishable and was, in fact, distinguished from the Marlborough case by the district court's decision but, even if not, the Marlborough doctrine is controlling upon us. There was no reorganization of Savoy by the incorporation of the petitioner within the meaning of § 112(g) (1) (C).

Moreover, the exchange here was not only for voting stock but also for cash paid to the Piersons and the Detroit Trust Company, a creditor in its own right, as well as trustee for bondholders. That section requires that the exchange be solely for voting stock. Helvering v. Southwest Consol. Corporation, 315 U.S. 194, 199, 62 S.Ct. 546, 550, 86 L.Ed. 789, declares the term "solely" to be signficant and holds that the fact that cash is also paid takes the case outside the operation of the section.

The petitioner claims, however, that the cash payments were pursuant to an assumption of liability of the predecessor corporation and, therefore, should be disre-

garded. But even were we to assume that Savoy was the transferor, the nature and amount of the obligation was not determined and fixed until the plan of organization of the petitioner was adopted and put into effect by the agreement between the bondholders, the Piersons and the Detroit Trust Company, Helvering v. Southwest Consol. Corporation, supra. There, the Court said, "Though the liability assumed had its origin in obligations of the transferor, its nature and amount were determined and fixed in the reorganization."

The contention that the petitioner paid substantially more than $400,000.00 for the property because the cost to it was the value of the stock that constituted the consideration, and that the value of the stock must be determined by the value of the property at the time it was purchased was rejected by the Tax Court because there was no evidence before it as to the value of the property. We, likewise, reject it,—and for the same reason.

The decision of the Tax Court is affirmed.