STANDARD COAL, INCORPORATED, A CORPORATION, PETITIONER, ET AL.,[1] *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28323.   Promulgated April 29, 1953.

*Bayley Kohlmeier, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

---

[1] Fred C. Talbot, P. L. Shields, Frank J. Foran, Albert E. Schwabacher, William E. White, Ira S. Lillick, James H. Schwabacher, H. V. Alward, Mortimer Fleishhacker, Jr., Albert E. Schwabacher, Jr., trustees for Standard Coal, Incorporated, a corporation in dissolution, and Spring Canyon Coal Company, a corporation.

## OPINION.

Opper, *Judge:* The amount of petitioner's claimed depreciation deductions gives rise to the sole present controversy which is whether under section 113 (a) (22) petitioner's basis depends upon that of its predecessor because the property was acquired upon a transfer to which section 112 (b) (10), Internal Revenue Code,[2] applies.

That there existed a "plan," contrary to respondent's first contention, appears to us manifest from the history of the situation. Webster's second definition of the word is a "method or scheme of action, a way proposed to carry out a design * * *." Webster's International Dictionary, Second Edition. What was proposed to the trustee, to the supervising court, and to the bondholders was not only a foreclosure and sale but the expectation that the property would be

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

&ast; &ast; &ast; &ast; &ast; &ast;

(b) Exchanges Solely in Kind.—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(10) Gain or loss not recognized on reorganization of corporations in certain receivership and bankruptcy proceedings.—No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—

(A) in a receivership, foreclosure, or similar proceeding,

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation.

bid in by a majority of the bondholders in the name of the new corporation whose stock would be issued in exchange for the bonds. The "plan" was not required to be in writing, *William H. Redfield*, 34 B. T. A. 967, 973, and the fact that the original program was changed to conform to the court's requirements no more prevented it from being a plan than if any other procedural impediment had required the first plan to be subsequently altered. See *C. T. Investment Co.* v. *Commissioner*, (C. A. 8) 88 F. 2d 582; *Jesse Lee Brown* v. *Heiner*, (D. C. W. D. Penn.) 15 A. F. T. R. 899.

Had the situation arisen while the Revenue Act of 1932 was in effect, it would apparently have conformed to the then existing definition of a plan of "reorganization" under section 112 (g). Since the property was transferred on behalf of the bondholders of an insolvent corporation, and since their control had been effectively established by the institution of the foreclosure proceeding, the necessary continuity of interest was present. *Palm Springs Holding Corp.* v. *Commissioner*, 315 U. S. 185; cf. *Coon Run Fuel Co.*, 20 T. C. 122; *Harbor Building Trust*, 16 T. C. 1321, 1331.

There was, however, admittedly an absence of the "stock for stock" qualification of the 1934 Act. *Helvering* v. *Southwest Consolidated Corp.*, 315 U. S. 194. And were it not for the provisions of section 112 (b) (10), that could prove fatal here as it did in that case. But the primary purpose of the amendments enacted in 1943 and incorporated in that section was to overcome the effects of the Supreme Court decisions in "the family of financial readjustments" intended to be included in the reorganization provisions. *Southland Ice Co.*, 5 T. C. 842, 848.

It remains to be determined whether the technical requirements of section 112 (b) (10) have been complied with. We think they have. The program which we view as the "plan" was considered in its entirety by the court having jurisdiction in the foreclosure proceeding. These facts are uncontested and we have, of course, so found. Provision for the nonassenting bondholders in the original plan was unacceptable to the court and in order to obtain its approval, the plan was changed to meet its minimum requirements. The execution of the decree of foreclosure and sale resulting were at least the equivalent of the court's approval of the plan as modified. See Weiner, "Conflicting Functions of the Upset Price," 27 Col. L. Rev. 132, 151. And certainly no participant would have been free to violate the agreement to exchange the new corporation's stock for the insolvent company's bonds after the statement to the court had been made and the approval granted on that assumption. See *In re Fuller Cleaning & Dyeing Co.*, (C. A. 6) 118 F. 2d 978. Nothing in the purpose of the legislation nor its legislative history seems to us

to indicate that the proceedings, resulting in the submission and operation of the plan, fell short of that judicial supervision and approval which the legislature apparently substituted for the technical reorganization definitions previously contained within the exclusive scope of section 112 (g). It follows that on the present facts the substituted requirements of section 112 (b) (10) have been adequately satisfied.

As to the final insistence on the part of respondent that any plan submitted to and approved by the court was violated by the actual events, it seems to us to suffice that like most other plans the possibility was envisaged that not all of the affected bondholders would elect to participate. Any deviation from the originally proposed amounts was neither substantial nor unequal. A smaller percentage of participants than that appearing here has been held to furnish an adequate continuity of interest, there being apparently no question that substantially all of the property of the defunct corporation was transferred to the new venture. *Reilly Oil Co.*, 13 T. C. 919, affd. (C. A. 5) 189 F. 2d 332; see *Southland Ice Co.*, *supra*.

This was not a situation like *Mascot Stove Co.* v. *Commissioner*, (C. A. 6) 120 F. 2d 153, *Templeton's Jewelers, Inc.* v *United States*, (C. A. 6) 126 F. 2d 251, nor *Chicago Stadium Corporation*, 13 T. C. 889, the first two of which are expressly reaffirmed [3] notwithstanding provisions of section 112 (b) (10). As we said in *Chicago Stadium Corporation*, *supra*, the transfer to stockholders of a corporation in which all of the equity had been eliminated demonstrated that continuity of interest was lacking and that the situation was equivalent to a purchase for cash by those having no remaining interest in the old corporation. And for similar reasons, the provisions of section 112 (b) (10) were held to be inapplicable in *Chicago Stadium Corporation*, *supra*.

Concluding as we do that here the bondholders of the old corporation had become the effective owners of its property, *Palm Springs Holding Corp.* v. *Commissioner*, *supra*; that under a plan of reorganization approved by the court having jurisdiction substantially all of the corporation's property was transferred to a new corporation of which a large majority of such bondholders were in complete control, we view the present situation as one in which the ameliorative provisions of section 112 (b) (10) were intended to apply and in which, as a consequence, under section 113 (a) (22) petitioner's basis is to be treated as derived from that of its insolvent predecessor.

*Decision will be entered under Rule 50.*

---

[3] S. Rept. No. 627, 78th Cong., 1st Sess., pp. 49–53; H. Rept. No. 1079, 78th Cong., 2d Sess., pp. 45–49.