EDWIN J. McENANEY AND AGNES McENANEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 112754, 2038.   Promulgated April 3, 1944.

*Eugene J. Steiner, Esq.*, and *Russell E. Newkirk, Esq.*, for the petitioners.

*Oliver W. Toll, Esq.*, for the respondent.

554

## 556

### OPINION.

Hill, *Judge*: The primary question here presented is whether commissions paid by Amoco to petitioner pursuant to certain contractor's agreements constituted income to petitioner. The contracts, in brief, called for the sale and delivery of Amoco's petroleum products, in exchange for which Amoco agreed to pay petitioner specified commissions depending upon the amount and class of products delivered. The petroleum products were sold and delivered and Amoco paid petitioner commissions totaling $36,569.36 in 1937, $32,019.96 in 1938, and $31,223.17 in 1939. Petitioner did not report such sums as within his gross income for the respective taxable years, whereupon respondent increased his net income by the stated amounts.

Petitioner asserts that he is not chargeable with this income because he neither earned, received, nor enjoyed it. He contends that contractor's agreements were orally assigned to the corporation of which he was president, that the corporation performed the duties required by the contract through its officers and employees, and that it received the consideration therefor. It is true that, at least in 1938 and 1939, the corporation did perform the same undertakings

called for by the Amoco contracts and it is also true that petitioner endorsed over to the corporation the commission checks during those two years. These facts suggest that the corporation received gross income measured by the size of the commission checks (as it so reported) ; but they have no bearing on the principal question. There is nothing anomalous in the inclusion of the sums represented by the commission checks in the gross income of both petitioner and the corporation. See *R. & L. Inc.* v. *Commissioner*, 84 Fed. (2d) 721. Regardless of the corporation's performance and its ultimate receipt of the commission moneys, petitioner can prevail on this issue only if he is correct in his contention that the contracts were in fact assigned to the corporation. However, it is clear that in this contention he is wrong.

We recently considered a similar argument in *Joseph A. Paxson*, 2 T. C. 819. There, too, the principal officer of a family corporation had individually contracted with Amoco for the sale and hauling of petroleum products for a commission. There, too, Amoco knew that taxpayer had no equipment with which to perform all his undertakings, but that the family corporation did own such equipment and that it would be availed of. In disposing of the argument we said:

In his testimony the petitioner states that the contract "was turned over to the Albany Service Stations, for their exclusive use. They haul all the gas, carried all the gas, carried insurance, all compensation, everything that went with the conduct of the business. * * * They were to have the commission." He further states that, prior to the signing of the contract, he had an oral understanding with Amoco that the contract was going to be assigned to the Albany Co. The petitioner apparently seeks to establish the conclusion that he assigned the contract to the Albany Co. with the consent of Amoco. The contract, into which all prior agreements with regard to the subject matter thereof were merged, itself prescribes the manner in which it is to be assigned or modified, namely, with the consent in writing of Amoco. The petitioner informs us that he never made any assignment in writing and that Amoco never consented in writing to any assignment or modification. Thus, if the petitioner did transfer the contract to the Albany Co. by an oral assignment, his act was ineffectual and invalid, in view of the express prohibition contained in the contract and in view of the further fact that there is no evidence whatever to show that Amoco, subsequent to the execution of the contract, consented orally to the arrangement which the petitioner claims he made with the Albany Co. respecting the contracts.

The pertinency of this language to the present case is evident. In fact, a like conclusion here is even more forcefully compelled when we examine the terms of the instant contracts. While in the *Paxson* case the contract could be assigned, provided the written consent of Amoco was first obtained, here the contracts were expressly declared personal and nonassignable. Such provisions are valid. *New York Trust Co.* v. *Inland Oil & Transport Corporation*, 34 Fed. (2d) 653. It follows that any purported assignment of the contract by petitioner to the

corporation was ineffectual and invalid as a matter of law and that the commissions involved constitute income of petitioner. *Joseph A. Paxson, supra.*

However, we need not base this conclusion solely on the ground that the contractor's agreements were legally nonassignable; for, notwithstanding this circumstance, the evidence falls short of proving that an assignment was intended by petitioner or the corporation. "An assignment as ordinarily understood by the parties, and therefore as interpreted by the courts, is an attempt to give the assignee a right to have performance rendered to himself—not a right to compel performance to be rendered to the assignor as originally promised." Williston on Contracts, ¶412. Amoco's principal obligation under the contracts was to pay commissions. Payment was performance on its part. There was no attempt to convey to the corporation the right to demand of and enforce against Amoco such payment. Events, or their absence, after the alleged oral "assignment" disclose that neither party assumed such right to have passed from petitioner to the corporation. Amoco was not notified to send its checks to the corporation as assignee of the contractor's agreements. And, significantly, reports to Amoco were still made in petitioner's name. The corporation did perform, under petitioner's supervision and management, the undertakings which petitioner individually bound himself to perform by virtue of the contracts with Amoco. However, in so doing, it was not acting under the assumption of any duty it owed to Amoco but, rather, because of its duty to petitioner. The corporation promised petitioner that it would undertake to do *for him* what he was to do for Amoco. As part of the arrangement petitioner agreed to pay to the corporation what he received from Amoco for his performance and the corporation agreed to pay petitioner a salary of $200 per week, which was a substantial increase over his former salary. It is this arrangement which petitioner calls an oral "assignment" of his contractor's agreements. We think it clear that it constituted, not an assignment establishing a legal relationship between Amoco and the corporation, but an independent contract between petitioner and the corporation as subcontractor. Hence, the subcontractor's performance became in fact the contractor's performance under his original contracts, the compensation for which constituted income of the contractor, the petitioner.

Our conclusion that the commissions became a part of petitioner's income necessitates the consideration of the alternative issue, namely, whether respondent erred in failing to deduct from such income costs and expenses incurred in the performance of the contracts. Respondent treated the commissions as net income in petitioner's hands and determined the deficiencies accordingly. He did likewise in *Joseph*

*A. Paxson, supra,* wherein his determinations were approved. However, the question of expense deductions was neither raised nor considered in the *Paxson* case and it thus may not be regarded as disapproving such expenses in a reasonable amount, if shown to have been paid.

Petitioner asserts that he is entitled to deduct from the commissions chargeable to him the proportion of the corporation's expenses allocable to its performance of the undertakings called for by petitioner's contractor's agreements. To this end he introduced considerable evidence calculated to fix the allocation. Respondent objects to the allowance as deductions of the figures so computed on the principle that the expenditures which they represent are those made and deducted by the corporation and that they were not in fact made by petitioner. We think this objection well taken. As we have stated above, the corporation's so-called "commission business" was carried on as a result of its contract with petitioner. The ordinary and necessary expenses connected with such business were deductible from the sums received from petitioner in ascertaining its own net income. They do not represent the cost to petitioner of performing his duties under his agreement with Amoco. Consequently, they are not deductible by him.

It does not follow, however, that petitioner did not have expenses or that he is not entitled to a business expense deduction. During the years 1938 and 1939 he was obligated under a subcontract to pay over exactly what he received as commissions from Amoco. The amounts earned under his contracts were in truth the sum of his expenses in performing the contracts. It can scarcely be supposed that the expenditures were not ordinary and necessary. The work contemplated by the contracts could not be accomplished by a single person, nor was it possible to deliver the petroleum products, a condition precedent to the right to the commissions, without the proper equipment. Since petitioner was an individual and owned no gasoline storage and delivery equipment, it was necessary for him to engage assistance, and subcontracting the execution of duties for a consideration is an ordinary means of securing their performance. The debatable question is whether the expenses were reasonable in amount.

We considered a similar problem under somewhat analogous circumstances in *Clinton Davidson,* 43 B. T. A. 576. There taxpayer contracted to turn over to his controlled corporation all commissions to be allowed him on initial premiums on insurance policies, he being an insurance broker. His corporation maintained an office, a staff of employees, extensively advertised its services, and otherwise made possible Davidson's volume of business. Davidson endorsed commissions amounting to as much as $4,000,000 annually to the corporation,

from which he drew no salary. We held the commissions taxable to him but recognized the propriety of deducting therefrom ordinary and necessary expenses in a reasonable amount. However, we deemed the endorsement over to the corporation of the entire commissions not reasonable as compensation to it for the contribution which it made to the earning of the commissions and said: "We are, accordingly, unable to determine that the payments due the corporation under the contract were the true measure of petitioner's expense and correspondingly deductible." We did allow Davidson a deduction comparable to his corporation's expenses, respondent by his original determination having sought to tax to Davidson only the corporation's net income. The *Davidson* case is cited as authority and for comparison. It is authority for the proposition that petitioner is entitled to deduct from his commissions the expenses incurred in earning them. In disapproving the deduction of payments to the corporation in the amount fixed by the contract as unreasonable it demands comparative analysis. There the petitioner paid 100 percent of his commissions to the corporation for its services. It is perfectly apparent that one would not make so generous an arrangement with a stranger. But here the total effect of petitioner's oral agreement was the payment over of something substantially less than 100 percent of his commissions. An integral and important part of the agreement was the corporation's promise to pay petitioner a salary of $200 per week or $10,400 per year. In 1937 petitioner received from the corporation a salary of only $4,020. In 1938 and 1939 he received, plus a bonus, the agreed $10,400. Thus, while petitioner did endorse over to the corporation approximately $32,000 in commission checks in each of the years 1938 and 1939, he received $6,380 in excess of his former salary. The net result of the agreement was the expenditure on petitioner's part of about 80 percent of his commissions to obtain the performance of his obligations to Amoco. In view of the character of these obligations in their requirement of the use of capital and the employment of labor, we think the expenditures reasonable in amount.

We are not impressed by respondent's technical proposition that petitioner's right to such deductions is foreclosed because, in turning over the commissions to the corporation, he believed himself obliged to do so because of an assignment and not in payment of business services. We doubt that petitioner, at that time, thought very much about the legal effect of his informal agreement with the corporation. In any event, his conclusions upon the legal consequences flowing from his acts do not bind us and did not here adversely affect respondent when it came to deciding whether petitioner was chargeable with income. We do not see why they should bind petitioner when his right to a business expense is in issue, no question of estoppel being involved. Moreover, it was not only permissible, but proper, for

petitioner to plead in the alternative, and we think his petition is adequate for this purpose. Certainly, respondent has not been misled.

We hold that petitioner is entitled to deduct as business expenses the amounts paid to the corporation in 1938 and 1939. Thus, his gross income from commissions in those years is wholly offset.

It is to be noted that the above conclusion is confined to the taxable years 1938 and 1939. The evidence on this issue pertaining to the year 1937 is meager and unsatisfactory. The corporation's records for that year had been lost. There is some testimony which could be construed to suggest that the same arrangement between petitioner and the corporation obtained in 1937. However, petitioner's documentary evidence indicates that such was not the fact and we have so found. Both petitioner's and the corporation's sworn 1937 tax returns are in evidence. They show that petitioner received a salary of $4,020 in 1937 as against $10,400 in each of the years 1938 and 1939, and that the corporation failed to report the receipt of commissions from petitioner. Amoco paid $36,569.36 under the contractor's agreements in that year, but this figure nowhere appears in the tax returns of either petitioner or the corporation. Petitioner's 1937 gross income is stated to be $6,420 and the corporation's $30,453.46. Moreover, the corporation's deductions for 1937 do not approach those claimed in the subsequent years. For instance, its salary and wage deduction was $4,407 in 1937 against $18,763 in 1939. We can scarcely suppose that sufficient employees could be hired for $4,407 to handle the work which the Amoco contracts called for, especially since the wage payments increased fourfold two years later, a period during which Amoco paid less in commissions for, we assume, less work than was performed in 1937.

The record fails to touch upon these inconsistencies. It is not our province to resort to conjecture and surmise. There is simply no evidence here upon which we could determine with any degree of certainty the amount of petitioner's 1937 business expenses. The expenses for 1938 and 1939 do not assist us, for, as we have pointed out, the arrangement existing in those years was not previously in effect. As petitioner has failed to sustain his burden, we approve respondent's determination of deficiency for the year 1937.

The next issue involves the amount of the deductions for traveling and entertainment expenses to which petitioner is entitled in each of the years 1938 and 1939. Petitioner claimed such deduction in the amount of $2,350 in 1938. Respondent allowed $1,350 and disallowed the balance for lack of substantiation. No evidence was offered respecting expenditures for travel and entertainment in 1938 and, accordingly, respondent's adjustment for that year is approved.

Similar deductions of $1,835.50 were claimed in 1939 and again respondent disallowed the claims to the extent of $1,000 for lack of sub-

stantiation. Petitioner testified to having made fourteen business trips to New York City and three or four each to Binghamton and Utica during the year. His railroad fare to New York was $5.10 each way and his hotel bill $4.50 per day. His trips averaged about three days each. While we regard the evidence as sufficiently proving that such expenditures were made, it falls short of establishing expenditures in an amount exceeding the $835.50 which respondent allowed. Therefore, respondent likewise did not err in making the adjustment for 1939.

The final controverted issue pertains to respondent's partial disallowance of petitioner's claimed deductions for contributions made in 1938 and 1939. Did respondent err in disallowing $550 of $1,550 claimed contributions for 1938? The answer must be in the negative, since petitioner offered no evidence regarding his contributions for that year.

As to 1939 respondent allowed only $125 of the $1,531.58 claimed deduction. Although petitioner kept no records, he testified and we have found that he gave to various Catholic religious, charitable, or educational institutions not less than $1,650 during the year. Respondent admitted the qualification of the institutions under section 23 (o) of the Internal Revenue Code. We hold that petitioner is entitled to deduct from his 1939 gross income the full amount of the claimed deduction, subject to the 15 percent limitation provided in section 23 (o) of the Internal Revenue Code. Respondent erred in holding otherwise.

The proceeding will be disposed of in accordance with the foregoing opinion and respondent's concession of error respecting the rentals adjustment.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*