Charles J. McLennan v. Commissioner.
Charles J. McLennan v. Commissioner
Docket No. 4757.
United States Tax Court
1945 Tax Ct. Memo LEXIS 146; 4 T.C.M. (CCH) 672; T.C.M. (RIA) 45217; June 25, 1945
*146 Thos. McE. Johnston, Esq., and James J. Keller, C.P.A., 1406 Security Bldg., Miami, Fla., for the petitioner. Edward L. Potter, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This case involves a deficiency in income tax for the year 1941 in the amount of $3,274.89. Most of the deficiency results from the disallowance by the Commissioner of deductions claimed for business expenses totaling $5,954.47. Other adjustments to net income are not contested. Findings of Fact Petitioner is an individual residing at 3003 Alhambra Circle, Coral Gables, Florida. His income tax return for the calendar year 1941, prepared on a cash basis, was filed with the collector of internal revenue at Jacksonville, Florida, and the tax shown to be due was paid. In 1937 petitioner built a home in Miami, Florida, in which he and his family resided until 1941. In that year he bought a home in Coral Gables where he presently resides. He has claimed and has been allowed homestead exemption as a resident of Florida since 1938. In 1941 he paid non-resident state income tax in Maryland as a resident of Florida. No place other than Coral Gables was, *147 at any time, looked upon by petitioner as his home during the year 1941. Petitioner's occupation is racing secretary and handicapper. He has been connected with horse racing since he was a child, his father having been in that business. During the year 1941 he served as racing secretary and handicapper at the following named tracks, which held meets as shown: Hialeah Park, Hialeah, Florida, commencing January 9, 1941, for 45 days; Havre de Grace, Havre de Grace, Maryland, commencing April 14 for 12 days; Pimlico, Baltimore, Maryland, commencing April 28 for 12 days; Suffolk Downs, BostonMassachusetts, commencing May 12 for 60 days; Washington Park, Chicago, Illinois, commencing August 1 for 32 days; Havre de Grace, Havre de Grace, Maryland, commencing September 13 for 13 days; Pimlico, Baltimore, Maryland, commencing October 30 for 13 days. Petitioner's duties as racing secretary and handicapper include the scheduling of all races, arranging with the owners of horses to have them entered in the various races, passing upon applications for stabling and thus determining the horses to be run, arranging the various classes of races and handicapping all horses entered. *148 Handicapping is an incident in securing evenly matched contests and includes the assignment of weight. Fixing of handicaps is largely a matter of personal opinion, based upon observation and known history of the horses. There is no appeal from the decision of a handicapper. Petitioner's duties required him to be at, or close to, the tracks when they were opened and usually before the opening. In most of the states (including those in which petitioner worked as a secretary and handicapper) racing is permitted for only a limited number of days each year. Petitioner therefore had to go from track to track in carrying on the duties of his employment. Petitioner served the association in charge of racing at the places referred to above under year to year contracts with the exception of Suffolk Downs, where he was under written contract with Eastern Racing Association, Inc. The contract with this association had been entered into in 1938 for three years and extended for two additional years in 1940. His compensation under this contract was $300 per day for each day during which racing was conducted by Eastern and $500 per month for the remainder of the term of the contract. Petitioner *149 received no compensation for traveling or living expenses under any of his contracts. While petitioner served at Hialeah he lived at his home in Coral Gables, Florida. No part of his living expenses during that time was deducted from gross income or is now in issue. While he served at Pimlico he lived at the Belview Hotel, Baltimore, Maryland. While he served at Havre de Grace he lived at the Colonial Hotel; at Chicago, while serving Washington Park, he lived at the Olympia Fields Country Club and while at Boston (Suffolk Downs) he lived in a rented house. In the taxable year, while stationed at the places referred to above, petitioner expended for hotel bills and living expenses the following amounts: At Chicago
$ 504.00
At Baltimore
916.00
At Boston
1,240.00
$2,660.00 While at Boston he also incurred expenses aggregating $110 for caterer's bills, making the total expended for meals and lodging while away from home $2,770. This amount was claimed as a deduction from gross income in his return for 1941 but was disallowed by respondent. In petitioner's income tax return for 1941 he also deducted traveling expenses in the amount of $1,552.37. Of this amount *150 $640.53 was expended in making short business trips required by his duties and it has been allowed as a deduction. The remainder, or $911.84, was expended by petitioner in going from one of the places where racing was being conducted to another. This item was disallowed by the Commissioner. In connection with the short business trips referred to in the preceding paragraph petitioner incurred and paid hotel bills in the amount of $272.63. This amount was deducted in his income tax return for 1941, but was disallowed by the Commissioner. The aggregate of the disallowances heretofore referred to is $3,954.47. The position of racing secretary and handicapper for the associations conducting races at the places referred to above (and each of them) was among the most desirable in the country. The field was limited and competition for the relatively few places was keen. Petitioner found it necessary to cultivate the friendship and acquaintance of racing officials, track owners, horsemen and turf writers and to entertain such persons in order to further his business. His manner of entertainment in the summer time was chiefly dinners and theater parties. In the winter time he entertained *151 such persons at Miami, principally on a yacht owned by him which was kept docked at the Biscayne Yacht Club except during the storm season. The yacht was 48 feet in length and, in addition to the owner's stateroom and captain's quarters, it had sleeping quarters for four guests. Petitioner kept a captain on the yacht throughout the year and the yacht was continuously provisioned with food and liquor. The captain was paid $150 per month; but when he was away from Miami with the yacht petitioner also paid for his room and meals. The cost of gasoline and oil for the yacht during the winter months of 1941 amounted to from $65 to $75 per month. Full insurance was carried at a cost of $550 per year and the hardware bills ranged from $25 to $30 per month. The boat was equipped with a "boat to shore" radio, used by petitioner and his guests. Food, liquor and fish bait were furnished by petitioner. Sometimes additional employees were hired to assist in caring for large parties. Petitioner was busy at Hialeah during most of the winter and could not spend much time on the boat. During the winter of 1941 petitioner's wife did not use the boat at all. At times petitioner had the yacht at Boston *152 where he used it to entertain guests. Petitioner estimated that the boat was used about one-third for business purposes and two-thirds for his own personal use. He considered it to be necessary to do this type of entertaining in order to maintain his business contacts. He also maintained memberships in the Biscayne Yacht Club, Miami Springs Country Club, Cottage Park Country Club at Boston; Country Club at Baltimore; and Olympia Fields Country Club, Chicago, for the purpose of entertaining his business associates. The amount expended by petitioner in 1941 for entertainment of his business associates was substantially more than $2,000. In previous years he had claimed approximately $5,000 for entertainment on his income tax returns but had been told by an examiner from the internal revenue department that an amount in excess of $2,000 was not justifiable for a person with such an income as he had. Thereafter, in the taxable year, petitioner claimed $2,000 as an ordinary and necessary business expense. The deduction was disallowed by the Commissioner. Opinion The issue of deductibility of the traveling expenses and the amounts expended for meals and lodging is presented purely *153 as a question of law. Respondent does not dispute that the amounts shown in our findings were expended for the purposes indicated. He attempts to support his determination upon the theory espoused by him in Coburn v. Commissioner, 138 Fed. (2d) 763, viz., that the term "home" in the applicable statute, [1] is used in a special "tax sense" and should be construed to mean the principal place of business, post or duty, or place of employment of the taxpayer. The Circuit Court of Appeals for the Second Circuit found this view to be untenable. No application for certiorari was filed. The Coburn case has been followed in several later opinions of this court, among others Harry F. Schurer, 3 T.C. 554 in which a "journeyman plumber" was required to go from place to place in carryon his trade. Cf. Charles G. Gustafson, 3 T.C. 998, in which a national representative of a trade journal spent the entire year traveling about the country promoting circulation. It was followed in Wallace Jr., et al. v. Commissioner, 144 Fed. (2d) 407 in which we were reversed for disallowing the claimed deductions of a movie actress for food, rent and traveling *154 expenses while she was away from home in San Francisco, at Hollywood, for several months of the year. See also Flowers v. Commissioner, 148 Fed. (2d) 163, 5 C.C.A. March 23, 1945.
Nor is the rule of law of the Coburn case contrary to the rationale of the cases cited by the respondent. [2] Most of them were discussed by the court in that case. It may be applied under facts such as those now before us without derogating in the slightest from the rule announced in the Bixler, Lindsay and similar cases. Cf. Charles G. Gustafson, supra, and Barnhill et al. v. Commissioner, 148 Fed. (2d) 913 (4 C.C.A. April 9, 1945), affirming memorandum opinions of the Tax Court, [3 TCM 514, 13,981(M), 3 TCM 544]. It would be a far stretch of the rule applied in the Barnhill and similar cases to hold that one spending but a few days *155 in a city to which his business had taken him would be deprived of the deductions allowed by the statute. The facts which have been shown in our findings and which are not questioned by respondent compel the conclusion that petitioner's home, throughout the taxable year, was in Florida. Therefore the traveling expenses and the amounts expended for food and lodging aggregating $3,954.47 were properly deducted by him from his gross income. The remaining question is whether the $2,000 spent for entertainment was an ordinary and necessary business expense within the meaning of the statute. We think it was. Petitioner's position as racing secretary and handicapper was highly competitive and it was necessary for him to cultivate and maintain the friendship and acquaintance of racing officials, track owners, horsemen and turf writers in order to further his business interests. His manner of entertainment in the summer time was through invitations *156 to dinners and theaters once or twice a week. In the winter time he used a small yacht owned by him which he kept docked at Miami. Cf. Cohan v. Commissioner, 39 Fed. (2d) 540. We think the evidence clearly justifies the finding that at least $2,000 of the amount spent in entertaining was for the purpose of promoting petitioner's business and therefore an ordinary and necessary business expense. As racing secretary and handicapper petitioner made up the races and contacted the owners of the horses that were to run. If the handicaps fixed by him were felt to be unfair the owners would not have participated and the meets would have been failures from a financial standpoint. Obviously petitioner would not have been able to hold his position with the racing associations if he had not been able to build up a large interest in the races. This view is supported, e.g. by the fact that upon the extension of his contract with the Eastern Racing Association it was provided that if the mutuel play fell below a daily average of $425,000 the contract would be cancelled and a revision of terms of an extension mutually satisfactory to both parties would be considered. Turf writers and *157 others entertained by petitioner had much influence for good and ill upon his business. Adverse and unjustified criticism could seriously affect the attendance at the races and incidentally cause the track owners to seek another secretary. Entertaining them and seeking their counsel was a legitimate business expense. So far as the expense for maintaining memberships in the several clubs is concerned, we do not wish to be understood as approving any portion of it as an ordinary and necessary business expense. Cf. Reginald Denn, 33 B.T.A. 738; N. H. Van Sicklen, Jr., 33 B.T.A. 544 and George K. Gann, 41 B.T.A. 388. Decision will be entered under Rule 50. Footnotes
1. SEC. 23(a), I.R.C.
All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in pursuit of a trade or business.↩
2. Mort L. Bixler, 5 B.T.A. 1181; Charles E. Duncan, 17 B.T.A. 1088, affd., 47 Fed. (2d) 1082; George W. Lindsay, 34 B.T.A. 840; and Walter M. Priddy et al., 43 B.T.A. 18↩.