STELLA K. MANDEL, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4144, 4145, 4146, 4147, 4148, 4149, 4150, 5708.
Promulgated September 10, 1945.

*Harry B. Sutter, Esq., Samuel H. Horne, Esq.,* and *Whitney B. Flershem, C. P. A.,* for the petitioners.
*Charles J. Munz, Jr., Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith : Frank E. Mandel ; Edwin F. Mandel ; Albert E. M. Louer ; S. Mortimer Auerbach ; Estate of Albert S. Louer, deceased, Albert E. M. Louer and Arthur Perrow, Co-executors ; Babette Mandel Bird Trust u/w No. 28878, Chicago Title & Trust Co., Trustee ; and Eugene D. Mandel.

686

OPINION.

ARUNDELL, *Judge*: Relying upon the principle first enunciated in the now well known *Sansome* case (*Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667) that accumulated earnings and profits of a transferor corporation follow its assets into the hands of a transferee on a tax-free reorganization, so as to be available for dividend distribution, the respondent has held that petitioners-stockholders herein are taxable in full upon the amounts received by them as a result of the 1939 and 1940 distributions.

It is the respondent's position that the earned surplus of the old company acquired after March 1, 1913, followed its assets, proportionately, into the hands of the transferee corporations at the time of the tax-free reorganization in 1926. At the date of the transfer the old company's assets had a book value of $18,976,612.77. On the same date it had undistributed earnings accumulated after March 1, 1913, of $11,231,614.66. The book value of the assets transferred to the building corporation in exchange for the issuance of its stocks and bonds was $6,683,344.88. The ratio of the assets transferred to the old company's total assets was 35.22 percent, thus a like percentage of the earned surplus, or $3,955,774.68, was transferred to the building corporation and was thereafter available for dividend distribution. Since the prior distributions made and losses incurred from operations by the building corporation exceeded its net profits from operations and other credits to surplus account by only $1,865,927.41, there remained $2,089,847.27 of the "inherited" earnings available for distribution on January 1, 1939. The losses from operations, amounting to $55,813.03 in 1939 and $43,621.68 in 1940, still left earnings more than sufficient in amount to cover the distribution of $60,000 in 1939 and $50,000 in 1940. Thus, the respondent argues that the above mathematics clearly demonstrates that the distributions in question

were from earnings and profits, so as to make them taxable as dividends in the hands of the stockholders.

On the other side, the petitioners contend that of the six million some-odd dollar asset value transferred to the building corporation, $4,439,174.06 was represented by specific tangible assets which had been acquired by the old company prior to March 1, 1913, before the earnings in question had been accumulated. These assets consisted of land, buildings, and other tangibles. It is asserted that they represented capital only and that no surplus is properly chargeable to them. Petitioners argue that in neither the *Sansome* case nor in later cases in which the doctrine has been applied was there any specification or identification of assets acquired by the transferor corporation prior to March 1, 1913, and those acquired subsequent thereto, so as to permit of an allocation to specific assets in which the earned surplus of the company was actually invested. It is contended that, if there be a presumption that the earned surplus of a corporation is ratably invested in all of its assets, such presumption must fall upon a proper showing that certain specific assets were acquired by the company prior to March 1, 1913, and thus represented the investment exclusively of pre-1913 capital, paid-in surplus, or earnings.

On such premise petitioners argue that the assets specifically identified as pre-1913 should be deducted from the corporation's total asset value, leaving only the assets in which the post 1913 earned surplus might reasonably have been invested. In the instant proceeding the sum of $4,439,174.06 representing the agreed upon book value of the pre-1913 assets, when deducted from $18,976,612.77, the book value of all assets, leaves assets of $14,537,438.71, in which the post-1913 earnings are said to be invested. Of the total value, assets amounting to $2,244,170.82 were transferred to the building corporation, being 15.437 percent of the asset value. Hence, it is contended that 15.437 percent of the total earned surplus of $11,231,614.66, amounting to $1,733,824.35, is the ratable proportion of the earned surplus which was transferred to the building corporation. Since the building corporation's debits to its surplus account exceeded credits thereto by $1,865,-927.41 in 1938, the building corporation had no accumulated earnings or profits out of which the 1939 and 1940 distributions could have been made.

The petitioners' theory of allocation raises a question which does not appear to have been heretofore specifically presented and settled in the decided cases, though inherent in a number of them. However, as a general proposition, the method of allocation urged by the respondent finds abundant support in decided cases. See *Barnes* v. *United States*, 22 Fed. Supp. 282; *Estate of Howard H. McClintic*, 47 B. T. A. 188 (appealed, C. C. A., 3d Cir., and settled by stipulation in compromise) ;

*Senior Investment Corporation*, 2 T. C. 124 (appeal pending, C. C. A., 6th Cir.). In the instant transaction it clearly appears that there is a substantial identity of the old company in the several corporations involved and that there is a continuity of proprietary interests so as to make the rationale of the above cases applicable.

We think it is immaterial that the petitioners have been able to identify certain of the assets transferred to the building corporation as having been acquired by the old company prior to 1913. The assets of the old company at their book value on the date of the transfer reflected the company's total earned surplus, and there was no corresponding relationship between the individual asset items on the one side and the earned surplus account on the other. Even if it were possible for the petitioners to identify the specific asset items into which the earned surplus had been poured and establish the exact amount of the surplus poured into each item, we would not be warranted in approving the method of allocation contended for by the petitioners. In *Estate of Howard H. McClintic, supra,* where an original transferor corporation had retained assets of sufficient value to more than offset the accumulated earned surplus there in question and where the petitioners therein strenuously urged that the *Sansome* rule was inapplicable, we pointed out that an asset does not ordinarily partake of a character permitting its classification as between capital on the one hand and surplus on the other, and that it is not the practice to maintain books of account or balance sheets in such a way that a division or allocation could be made by inspection of the asset or of its accounting treatment. Moreover, the limitations suggested by the petitioners would lead to immense administrative problems not only on the part of the Bureau of Internal Revenue, but also on the part of taxpayers, and would lay the groundwork for many uncertainties.

Capital existing on March 1, 1913, thereafter retains its character, not in the specific asset items in which it is then reflected, but in amount or value. Hence, the value of the assets as of that date provides the measurement for the taxpayer's gain or loss on the subsequent sale or exchange of the property, subject, of course, to adjustments provided by law, and it affords a basis for measuring profits or earnings from the operations of the business, likewise as provided by law. In so far as the instant proceeding is concerned, we see no hardship that will result from the application of the rule urged by the respondent, and it seems clear that the case should fall within the rationale of those cases which provide for allocation according to the asset value received. Accordingly, we find that the Mandel Building Corporation is properly chargeable with the receipt of earned surplus in the amount of $3,955,774.68 at the reorganization in April 1926. See *Murchison's Estate* v. *Commissioner,* 76 Fed. (2d) 641.

As an alternative issue the petitioners contend that, whatever the accumulated earnings received by the building corporation, they were distributed in the $8,000,000 of 7 percent first mortgage bonds issued by the building corporation on April 27, 1926. It is argued that, since the amount of that distribution would more than offset any earnings or profits allocated to the building corporation, the 1939 and 1940 distributions could not have been out of earnings.

Section 203 (g) of the Revenue Act of 1926, in effect at the date of the reorganization here in question, specifically provided that a distribution pursuant to a plan of reorganization, by or on behalf of a corporation a party to the reorganization, of its stock or securities, or stock or securities in a corporation a party to the reorganization, should not be considered a distribution of earnings or profits for the purpose of determining the taxability of subsequent distributions by the corporation. Further, section 203 (b) (2) and (3) of the same act, set out in the margin,[2] bears out the stipulation of the parties that the reorganization was one in which gain or loss was not recognized, and the provisions thereof, taken in the light of section 115 (h) of the Internal Revenue Code, which provides that a distribution of stock or securities shall not be considered a distribution of earnings or profits of any corporation if no gain to the distributee was recognized by law, seem clearly to establish a second statutory prohibition preventing the bond issue in question from being a distribution of earnings and profits. That section 115 (h) has the effect here given to it, see Senate Finance Committee Report No. 2156, 74th Cong., 2d sess. (C. B. 1939–1 (part 2) at pages 678, 690), which is set out in the margin.[3]

---

[2] RECOGNITION OF GAIN OR LOSS FROM SALES AND EXCHANGES.
SEC. 203. * * *
(b) * * *
(2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
(3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

[3] Section 115 (h). Effect of Distributions on Earnings and Profits.
The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which, under the applicable tax law, is a nontaxable stock dividend or a distribution of stock or securities in connection with a reorganization or other exchange, on which gain is not recognized in full, is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange. This rule is stated only in part in section 115 (h) of, the Revenue Act of 1934, and corresponding provisions of prior Acts, but is the rule which is applied by the Treasury and supported by the courts in *Commissioner* v. *Sansome* (60 Fed. (2d) 931) ; *United States* v. *Kauffman* (62 Fed. (2d) 1045) ; *Murcheson* v. *Comm.* (76 Fed. (2d) 641). While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity.

First mortgage bonds, such as those here in question, fall within the meaning of the term "securities" as used in the statute. See *Commissioner* v. *Freund*, 98 Fed. (2d) 201, and cases cited therein.

The cases upon which petitioners rely do not appear to support their argument. In *Alice H. Bazley*, 4 T. C. 897, we held that the reorganization lacked a legitimate business purpose and was not entitled to recognition for purposes of Federal taxation.

These views make it unnecessary to consider the question of petitioners' basis for the preferred shares.

*Decision will be entered under Rule 50.*