GENERAL ARTISTS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25416. Promulgated March 18, 1952.

*Morton Miller, Esq.*, and *Nathaniel Miller, C. P. A.*, for the petitioner.

*William A. Schmitt, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The petitioner contends that its three contracts were capital assets which it sold to MCA after having held those capital assets for more than six months, and $38,860.53 of the total amount which it received from MCA during the petitioner's fiscal year ended October 31, 1944, was taxable as a long term capital gain. The Commissioner has held that the entire amount received from MCA was ordinary income and no part of it was a capital gain. His determination is presumed to be correct and the burden of proof to show that the $38,860.53 is taxable as a long term capital gain is upon the petitioner. A long term capital gain means gain from the sale or exchange of a capital asset held for more than 6 months. Section 117 (a) (4).

The three contracts in question were for the personal services of the petitioner and they gave to the petitioner the right to receive 10 per cent of Sinatra's earnings on contracts procured for Sinatra by the petitioner. It does not appear that they could be sold. The following from *Thurlow E. McFall*, 34 B. T. A. 108, is apropos:

Petitioners did not sell their contracts, for inherently this they could not do. The contracts bound them to perform services of skill. *Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379. Before they had any contractual rights which they could sell, they were obligated to perform services for the company. All past services had been fully paid for and there was no due and unpaid amount to constitute a chose in action subject to assignment. On April 2, 1929, there was a right of petitioners to continue to perform service and then to be paid—to persist in their contractual relation for its agreed term. While this right is property in the constitutional sense in that it could not be arbitrarily legislated away, it is not capital. *Beals* v. *Commissioner*, 82 F. 2d 268. It is a continuing right which goes hand in hand with performance. Before performance it is in embryo, and after payment it is exhausted. Obviously it is not the sort

of property which is susceptible of ownership for a length of time as is a share of stock, a bond, or a thing.

See also *George K. Gann*, 41 B. T. A. 388.

The relationship, if any, between the petitioner and MCA, their motives in entering into the contract of December 10, 1943, and the purposes which they intended to accomplish thereby, and those of Sinatra in agreeing to the change, are not adequately disclosed by the record. MCA was to receive as its own a fee of only 5 per cent for performing the same services for Sinatra in the future for which the petitioner had charged 10 per cent, while the petitioner gave up 5 per cent on valuable contracts on which it had already done its part. But whatever the explanations for their actions may have been, nevertheless, the petitioner did not actually sell its agency contracts with Sinatra to MCA under the agreement of December 10, 1943, despite the fact that the parties described their transaction as a sale. Those contracts were to be canceled immediately under the agreement dated December 10, 1943, and thereupon MCA was to enter into new agency contracts with Sinatra. Thus, even if the subject matter of the agreement of December 10, 1943, had been salable property, nevertheless, it was not sold by the petitioner to MCA in the sense that thereafter MCA continued to own it. The effect of the agreement was not to sell anything but to permit MCA and Sinatra to enter into new contracts under which MCA would be the exclusive agent of Sinatra instead of the petitioner. That is not a sale or exchange within the meaning of section 117.

A further effect of the agreement was that MCA henceforth would perform any new services for Sinatra which might be required and the petitioner, for permitting MCA to perform those services and earn a part of the fee, was to receive from MCA one-half of the total commissions which MCA collected from Sinatra. That was compensation to the petitioner, not proceeds of a sale of a capital asset. If one person, originally employed to do work, has another do the work, with the consent of the employer, for a part of the charge, the entire amount received is still ordinary income. The amount received by the petitioner from Sinatra through MCA was of that character and likewise ordinary income. Cf. *Edwin J. McEnaney*, 3 T. C. 552.

Finally, and this of itself is fatal to the petitioner's case, it appears that a large part, perhaps all, of the amount which the petitioner received in the taxable year from MCA was commissions earned on contracts obtained for Sinatra by the petitioner or on extensions of such contracts. The petitioner was entitled to that income as soon as Sinatra performed the services and could not, by assigning the income, relieve itself of tax on that income which, so far as the petitioner was concerned, was earned when the petitioner obtained the contract of

employment for Sinatra. *Charles J. Williams*, 5 T. C. 639; *Herman Shumlin*, 16 T. C. 407; *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Eubank*, 311 U. S. 122; *Straus* v. *Commissioner*, 168 F. 2d 441, certiorari denied 335 U. S. 858, rehearing denied 335 U. S. 888. The evidence shows that the Hit Parade contract was obtained by the petitioner before entering into the contract with MCA. The same was true of the RKO contract. The petitioner merely introduced Exhibit No. 5 and did not explain or support the statements contained thereon. The evidence does not show which contracts, if any, were new contracts obtained for Sinatra by MCA and were not contracts previously obtained by the petitioner.

The petitioner has failed to show that the Commissioner erred in taxing the entire $41,780.88 to the petitioner as ordinary income.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN, *J.*, concurs in the result.

---

LEMIRE, *J.*, dissenting: I disagree with the majority holding that the agency contracts under consideration were not assignable property, that they were not in fact assigned and sold by the petitioner as capital assets, and that the commissions subsequently earned by the assignee and paid over to the petitioner as a part of the purchase price were ordinary income of the petitioner.

The contracts were ordinary agency contracts. They called for certain booking agency services to be performed by the petitioner and personal entertainment performances by Frank Sinatra. While the services to be performed by Sinatra were unique and of a strictly personal nature, there is nothing to indicate that this is true of the services to be performed by petitioner or that those services could not have been performed as well by any other competent booking agency. In fact, the evidence is that these services were satisfactorily performed by MCA after the assignment of the contracts. Moreover, there is no legal restraint on the assignment even of strictly personal service contracts where the parties consent to the assignment, as did the parties here. See 6 C. J. S., p. 1074.

The facts leave no doubt in my mind that the actions which the parties took were intended to effect and did effect a complete assignment and sale of the contracts rather than a farming out by the petitioner of the work which it was to perform under a sort of subcontract arrangement, as suggested in the majority opinion. I do not see how the fact that the old contracts were immediately canceled after the assignment and new contracts entered into between petitioner and MCA precludes a sale. Is that to say that there can be no capital gain

sale of an asset unless the assignee continues to hold and use it? A payment by an insurance company to an exclusive agency for cancelation of the agency contract was held to be a capital gain in *Jones* v. *Corbyn*, 186 F. 2d 450. It seems to me wholly immaterial whether after the assignment MCA and Sinatra continued under the old contracts or entered into new contracts replacing them.

The commissions involved here, as I understand it, are commissions paid to MCA on bookings made for Sinatra after the assignment of the contracts. Petitioner has conceded in this proceeding that $2,920.35 of the amount which it received from MCA in the taxable year was from performances by Sinatra under bookings made prior to the assignment of the contracts and therefore constitutes ordinary income. The respondent does not contend that any more than the $2,920.35 was commissions on performances under bookings made before the assignment. The subsequent commissions could not have been compensation for any services performed by the petitioner for petitioner performed no services whatever for Sinatra after the assignment of the contract.

It is suggested in the majority opinion that petitioner merely agreed to let MCA perform the services which it was to perform under the contracts with Sinatra for a portion of the fee which MCA was to "collect" from Sinatra, and that "If one person, employed to do work, has another do the work for a part of the charge, the entire amount received is still ordinary income. The amount received by the petitioner from Sinatra through MCA was likewise ordinary income." I find nothing in the facts stated or in the evidence to support the proposition that MCA was in any sense an employee or subcontractor of petitioner in respect of these contracts. After the assignment MCA was the principal and only contractor with Sinatra. Petitioner had definitely terminated its agency relationship with and its services to Sinatra.

As I view our question here, it is simply whether the gain from the sale by an agent of an exclusive booking agency contract is capital gain or whether it is ordinary income. I think that the interest of an agent in such a contract is a property right or "capital assets" subject to sale just as was the insurance agency in *Jones* v. *Corbyn, supra.*

It is my opinion that the amount paid to petitioner by MCA was not petitioner's earnings and was not taxable to petitioner as ordinary income except for the commissions on services performed by Sinatra under bookings arranged for him by petitioner prior to the assignment of the contracts to MCA. The petitioner admits its liability to that extent.

ARUNDELL, BLACK, JOHNSON, and TIETJENS, *JJ.*, agree with this dissent.