OPINION. Murdock, Judge: The petitioner contends that its three contracts were capital assets which it sold to MCA after having held those capital assets for more than six months, and $38,860.53 of the total amount which it received from MCA during the petitioner’s fiscal year ended October 31, 1944, was taxable as a long term capital gain. The Commissioner has held that the entire amount received from MCA was ordinary income and no part of it was a capital gain. His determination is presumed to be correct and the burden of proof to show that the $38,860.53 is taxable as a long term capital gain is upon the petitioner. A long term capital gain means gain from the sale or exchange of a capital asset held for more than 6 months. Section nr (a) (4). The three contracts in question were for the personal services of the petitioner and they gave to the petitioner the right to receive 10 per cent of Sinatra’s earnings on contracts procured for Sinatra by the petitioner. It does not appear that they could be sold. The following from Thurlow E. McFall, 34 B. T. A. 108, is apropos: Petitioners did not sell their contracts, for inherently this they could not do. The contracts bound them to perform services of skill. Arkansas Valley Smelting Co. v. Belden Miming Co., 127 U. S. 379. Before they had any contractual rights which they could sell, they were obligated to perform services for the company. All past services had been fully paid for and there was no due and unpaid amount to constitute a chose in action subject to assignment. On April 2, 1929, there was a right of petitioners to continue to perform service and then to be paid — to persist in their contractual relation for its agreed term. While this right is property in the constitutional sense in that it could not be arbitrarily legislated away, it is not capital. Beals v. Commissioner, 82 F. 2d 268. It is a continuing right which goes hand in hand wiih performance. Before performance it is in embryo, and after payment it is exhausted. Obviously it is not the sort of property which is susceptible of ownership for a length of time as is a share of stock, a bond, or a thing. See also George K. Gann, 41 B. T. A. 388. The relationship, if any, between the petitioner and MCA, their motives in entering into the contract of December 10, 1943, and the purposes which they intended to accomplish thereby, and those of Sinatra in agreeing to the change, are not adequately disclosed by the record. MCA was to receive as its own a fee of only 5 per cent for performing the same services for Sinatra in the future for which the petitioner had charged 10 per cent, while the petitioner gave up 5 per cent on valuable contracts on which it had already done its part. But whatever the explanations for their actions may have been, nevertheless, the petitioner did not actually sell its agency contracts with Sinatra to MCA under the agreement of December 10, 1943, despite the fact that the parties described their transaction as a sale. Those contracts were to be canceled immediately under the agreement dated December 10, 1943, and thereupon MCA was to enter into new agency contracts with Sinatra. Thus, even if the subject matter of the agreement of December 10, 1943, had been salable property, nevertheless, it was not sold by the petitioner to MCA in the sense that thereafter MCA continued to own it. The effect of the agreement was not to sell anything but to permit MCA and Sinatra to enter into new contracts under which MCA would be the exclusive agent of Sinatra instead of the petitioner. That is not a sale or exchange within the meaning of section ITT. A further effect of the agreement was that MCA henceforth would perform any new services for Sinatra which might be required, and the petitioner, for permitting MCA to perform those services and earn a part of the fee, was to receive from MCA one-half of the total commissions which MCA collected from Sinatra. That was compensation to the petitioner, not proceeds of a sale of a capital asset. If one person, originally employed to do work, has another do the work, with the consent of the employer, for a part of the charge, the entire amount received is still ordinary income. The amount received by the petitioner from Sinatra through MCA was of that character and likewise ordinary income. Cf. Edwin J. McEnaney, 3 T. C. 552. Finally, and this of itself is fatal to the petitioner’s case, it appears that a large part, perhaps all, of the amount which the petitioner received in the taxable year from MCA was commissions earned on contracts obtained for Sinatra by the petitioner or on extensions of such contracts. The petitioner was entitled to that income as soon as Sinatra performed the services and could not, by assigning the income, relieve itself of tax on that income which, so far as the petitioner was concerned, was earned when the petitioner obtained the contract of employment for Sinatra. Charles J. Williams, 5 T. C. 689; Herman Shumlin, 16 T. C. 407; Lucas v. Earl, 281 U. S. 111; Helvering v. Eubank, 311 U. S. 122; Straus v. Commissioner, 168 F. 2d 441, certi-orari denied 335 U. S. 858, rehearing denied 335 U. S. 888. The evidence shows that the Hit Parade contract was obtained by the petitioner before entering into the contract with MCA. The same was true of the EKO contract. The petitioner merely introduced Exhibit No. 5 and did not explain or support the statements contained thereon. The evidence does not show which contracts, if any, were new contracts obtained for Sinatra by MCA and were not contracts previously obtained by the petitioner. The petitioner has failed to show that the Commissioner erred in taxing the entire $41,780.88 to the petitioner as ordinary income. Reviewed by the Court. Decision will be entered? under Bule 50. Kern, J., concurs in the result.