F. R. HUMPAGE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF CARL G. FISHER, DECEASED, F. R. HUMPAGE AND C. W. CHASE, JR., EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26855, 26856.   Promulgated March 31, 1952.

*George Kennan Hourwich, Esq.,* for the petitioners.
*Rigmor O. Carlsen, Esq.,* for the respondent.

1630

OPINION.

Arundell, *Judge:* The question for decision is whether the distributions received by the petitioners in 1940 from Carl G. Fisher Corporation constituted taxable dividends. The answer to this question depends upon whether or not the corporation had available earnings or profits at the time of the distribution. This in turn depends upon whether or not the accumulated earnings and profits of the predecessor, Fisher Company, were acquired as such by Fisher Corporation in the section 77B reorganization that was completed in 1935. If they were so acquired, there is a further question as to whether Fisher Corporation sustained a recognizable loss in 1938 when it relinquished stock and bonds of Montauk Beach Development Corporation in exchange for stock of Montauk Beach Company, Inc.

These proceedings involve two reorganizations under section 77B of the Bankruptcy Act, both of which reorganizations were founded upon mortgage bonds issued by Montauk Beach Development Corporation

and guaranteed as to payment of principal and interest by The Carl G. Fisher Company. The bonds were defaulted in 1932 and as a consequence of such default various court proceedings were instituted against both corporations by the mortgage trustee and bondholders and other creditors. As to both corporations, the several court proceedings culminated in petitions for reorganization under section 77B of the Bankruptcy Act. The Fisher reorganization proceeding was concluded in 1935 and that of Montauk in 1938.

### The Fisher Reorganization.

The Carl G. Fisher Company (called Fisher Company) had a large financial interest in Montauk Beach Development Corporation (called Montauk Corporation), consisting of stock acquired at a cost in excess of $1,946,000, bonds in the face amount of $57,000, and notes receivable in the amount of over $1,120,000. In addition, Fisher Company had guaranteed the payment of principal and interest on the bonds of Montauk Corporation, and by reason of such guaranty and the default on the bonds it was obligated as of October 1, 1934, to pay $2,741,000 principal and $472,240 interest. Its reorganization under section 77B ensued. The mechanics of carrying out the plan of reorganization were somewhat complicated, particularly as to the percentage distribution of stock among creditors. The net results were that its assets were transferred to a new corporation (called Fisher Corporation) and the capital stock of Fisher Corporation was issued to or for the benefit of the creditors of Fisher Company. Among such creditors were holders of Montauk bonds. The shareholders of Fisher Company did not receive any of the stock of Fisher Corporation.

The petitioners contend, principally, that (1) the enforcement of Fisher Company's guaranty of Montauk bonds eliminated accumulated earnings, or (2) that the distribution of Fisher Corporation stock under the plan of reorganization was a taxable transaction so that there was no transfer of accumulated earnings, in either of which events the 1940 distribution was not out of earnings or profits. The respondent's position is that the 1935 transfer of assets and issuance of stock constituted a tax free reorganization consequent upon which Fisher Corporation acquired the accumulated earnings of Fisher Company and that such earnings were available for dividends in the hands of the new corporation under the rationale of *Commissioner* v. *Sansome*, 60 F. 2d 931.

We think the petitioners are correct in their view that the earnings of Fisher Company were not acquired by Fisher Corporation, hence they were not available to the latter for the purpose of paying dividends. The parties have stipulated that as of November 26, 1935 (the date of transfer of assets), Fisher Company had earnings or

profits accumulated after February 28, 1913, in an amount not less than $2,188,183.27 or more than $2,395,093.93 before giving effect to its liability on its guaranty of the Montauk Corporation bonds. The liability of Fisher Company under its guaranty of the bonds was $2,741,000 as to principal, plus interest. When the bonds were defaulted, the liability which had theretofore been contingent became a present liability. Upon default, various court proceedings were commenced against Fisher Company. One was a suit based on the guaranty wherein a bondholder sought recovery of the face amount of Montauk bonds, plus interest. Actions were brought by the trustee under the Montauk mortgage indenture, one of which was for the recovery of the full amount of the principal of the bonds plus interest, and in another the trustee asked that a receiver be appointed for Fisher Company. Fisher Company had no legal defense to the creditors' claims under its guaranty, and its inability to pay caused it to seek a section 77B reorganization. The plan of reorganization recognized no equity in the stockholders, and the creditors became entitled to over 80 per cent of the new stock and to that extent became the equity owners of the assets. In such situations, where stockholders are excluded and creditors become equity owners, the beneficial ownership by the creditors does not await the formal transfer of assets and issuance of stock of the successor company but dates back to the time they invoked legal process to enforce their priority rights. This has been the holding by the Supreme Court in several cases beginning with *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179, wherein it was held:

We conclude, however, that it is immaterial that the transfer shifted the ownership of the equity in the property from the stockholders to the creditors of the old corporation. Plainly the old continuity of interest was broken. Technically that did not occur in this proceeding until the judicial sale took place. For practical purposes, however, it took place not later than the time when the creditors took steps to enforce their demands against their insolvent debtor. In this case, that was the date of the institution of bankruptcy proceedings. From that time on they had effective command over the disposition of the property. * * * When the equity owners are excluded and the old creditors become the stockholders of the new corporation, it conforms to realities to date their equity ownership from the time when they invoked the processes of the law to enforce their rights of full priority. At that time they stepped into the shoes of the old stockholders.

In the same case before the Board of Tax Appeals (41 B. T. A. 324), it was said at p. 331):

When a general creditor is stepped up to the status of ownership of a beneficial interest in the assets of a corporation by reason of its insolvency he has a right therein that is property; he owns something; he has an investment; he has a status with respect to such assets comparable to that of a common stockholder.

*Helvering* v. *Cement Investors, Inc.*, 316 U. S. 527, had its origin in a section 77B reorganization under which bondholders of the old corporation received stock of the new corporation. In holding that no gain or loss was to be recognized to the former bondholders, the Court said:

In case of reorganizations of insolvent corporations the creditors have the right to exclude the stockholders entirely from the reorganization plan. When the stockholders are excluded and the creditors of the old company become the stockholders of the new, "it conforms to realities to date their equity ownership" from the time when the processes of the law were invoked "to enforce their rights of full priority." *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179 * * *. Under that approach the ownership of the equity in these debtor companies effectively passed to these creditors at least when § 77B proceedings were instituted.

Under the rationale of the above cases, the beneficial ownership by Montauk bondholders in Fisher Company's assets, as creditors under the guaranty, antedated the transfer of the assets to Fisher Corporation. It is immaterial for present purposes whether that ownership vested at the time actions were instituted against Fisher Company, the filing of the plan, or the approval of the plan, as all were prior to the transfer of assets and the issuance of stock of the new corporation. Acquisition of the ownership of assets carries with it ownership of surplus. In *Estate of Howard H. McClintic*, 47 B. T. A. 188, involving a reorganization, we said (p. 200) :

An asset does not ordinarily partake of a character permitting its classification as between capital on the one hand and surplus on the other, and it is not the practice to maintain books of account or balance sheets in such a way that a division of this nature can be made by inspection of the asset or of its accounting treatment. See *Canal & Banking Co.* v. *New Orleans*, 99 U. S. 97. For all that will generally appear, and the present proceeding is no exception, the capital assets as a whole will incorporate the combined attributes of stated capital and paid-in or accumulated surplus.

We followed the *McClintic* case in *Stella K. Mandel*, 5 T. C. 684, which involved a split-off reorganization and held that the new corporation inherited earned surplus of the old corporation in the same proportion that it acquired assets. In this view, the surplus of Fisher Company, all of which was inherent in and part of its assets, became the property of the creditors who had "stepped into the shoes of the old stockholders" (*Helvering* v. *Alabama Asphaltic Limestone Co.*, *supra*) prior to the time of the formal transfer of assets. When the formal transfer was made "it is fair to say * * * that the transfer was made with their [the creditors'] authority and on their behalf." *Helvering* v. *Cement Investors, Inc.*, *supra*.

Whether or not the claim of the Montauk bondholders under the guaranty served to reduce Fisher Company's accumulated earnings, such earnings were distributed to the creditors when they acquired

beneficial ownership of the assets and they were no longer earnings in the hands of Fisher Company. It follows that they could not have been inherited by the successor corporation as earnings and could not have been available to the successor for the payment of dividends. Whether or not the extinguishment of the claims of the creditors resulted in gain or loss to them, the assets that they received constituted capital in their hands. When on their behalf (*Helvering* v. *Cement Investors, Inc.*) the assets were transferred to the successor corporation, such transfer was in effect a purchase of stock of the successor which, of course, did not create earnings or profits.

The *Sansome* case, and those that follow it, have no application to a situation such as we have here. In the *Sansome* case and others,[1] there were voluntary tax free reorganizations or liquidations between corporations, at least one of which had accumulated earnings that were not distributed in the reorganization or liquidation. Under such circumstances, the earnings remained available as such to the successor or surviving corporation. None of the cases in the *Sansome* group, as far as we can find, involved proceedings in bankruptcy courts where creditors ousted stockholders "to enforce their rights of full priority." *Helvering* v. *Alabama Asphaltic Limestone Co.*, *supra*. When the reason for the *Sansome* rule is considered, it is understandable that it should not be applied to a situation such as we have here. In *Samuel L. Slover*, 6 T. C. 884, cited with approval in *Commissioner* v. *Phipps*, 336 U. S. 410, we said:

> The origin and purpose of the *Sansome* rule has repeatedly been described as based upon the danger that otherwise distributions of accumulated earnings to stockholders would escape tax.

In this case, as we have said above, all accumulated earnings, if any, went over to the creditors and none was left for later distribution to stockholders.

In view of our conclusion that the accumulated earnings of Fisher Company were not acquired by Fisher Corporation in the reorganization, the respondent erred in treating as taxable dividends any amounts in excess of the amounts so reported by the petitioners. This conclusion as to the principal contention of the parties makes it unnecessary to consider alternative points argued by them.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

MURDOCK, HARRON, and RAUM, *JJ.*, dissent.

---

TURNER, *J.*, dissenting: Whatever the ultimate answer to the question here, it is my opinion that the pronouncements in the Court's

---

[1] Notably *Commissioner* v. *Phipps*, 336 U. S. 410.

opinion make bad law and, whether the result be right or wrong, there is no showing or demonstration that they are in harmony with the statute. In fact, the applicable provisions of the statute governing the tax effect of transactions such as are here involved, are not even mentioned or considered.

At the outset, it should be noted that but for the gain or loss non-recognizing provisions of the Internal Revenue Code, we would have no case before us. Taxwise, effect would be given under section 112 (a) of the Code to all of the exchanges and transactions which occurred in connection with the dissolution of the old corporation and the creation of the new, and for what may be termed normal corporate purposes, as distinguished from matters pertaining to Federal tax, the properties of the old corporation were received by the new corporation for its stock and constituted paid-in capital, regardless of whether the old corporation may have been a deficit corporation or had accumulated earnings or profits. If, however, the transaction or transactions whereby the new corporation acquired the assets of the old were such as to make them a reorganization under the nonrecognition provisions of the Internal Revenue Code, then, Federal taxwise, other considerations must be taken into account both with reference to the new corporation and its stockholders. In such case, the general result, subject, of course, to any statutory exceptions or qualifications, is that the new corporation and its stockholders are left in the same situation as when the old corporation was in existence. The new corporation takes its properties at the basis, for gain or loss purposes, at which they were held by the old corporation, the stockholders of the new corporation hold their stock at the same basis at which their stake in the old corporation was held and the new corporation, under the rule of the *Sansome* case, is charged with the accumulated earnings and profits of the old.

If I read the Court's opinion here correctly, the basis for its conclusion is summed up in the following statement:

Whether or not the claim of the Montauk bondholders under the guaranty served to reduce Fisher Company's accumulated earnings, such earnings were distributed to the creditors when they acquired beneficial ownership of the assets and they were no longer earnings in the hands of Fisher Company. It follows that they could not have been inherited by the successor corporation as earnings and could not have been available to the successor for the payment of dividends.

While the opinion avoids any direct or categorical statement or holding that the old corporation was liquidated in a step separate and apart from the reorganization under section 77B of the Bankruptcy Act of which the creation of the new corporation was a part, it is, in my opinion, a fair interpretation to say that there is in the above statement an assumption that such was the case. Possibly the reason for avoiding a definite holding that the old corporation was so liqui-

dated is that the reasoning in the opinion rests largely on things said by the Supreme Court in *Helvering* v. *Cement Investors, Inc.*, 316 U. S. 527, and in that opinion the Supreme Court carefully refrained from any conclusion that there was such a liquidation. The interests of the bondholders of the old corporation were referred to as equity interests and at no place did the Supreme Court indicate a view that they had become the owners of the corporate properties themselves. In another place the situation was compared with one "where the taxpayer had not 'closed out a losing venture.'" There the Supreme Court was concerned only with the tax effect to the bondholders of the old corporation of their receipt of the stock of the new corporation, and it was necessary only for the Supreme Court to find that the stock was received by them for property or property rights paid in to the new corporation for the stock received and after the receipt of the stock they were in control of the corporation and that the stock was held in substantially the same proportions as they had held the property or property rights which had been paid in to the new corporation for the stock received. If so, the requirements of section 112 (b) (5) were satisfied, and any gain that may have been realized upon the exchange was not, therefore, to be recognized. The Supreme Court did not have to concern itself with the question of basis of the properties or the stock to the recipients thereof, nor with the question which we have here. It specifically refrained from considering and deciding whether or not there had been taxwise a prior exchange or liquidation whereby the creditors of the old corporation had received in a transaction separate and apart from the section 77B reorganization the property or property rights which they had paid in to the new corporation for the stock.

If there had been a liquidation of the old corporation, prior to and separate and apart from the organization of the new corporation, that transaction would not have been subject to any gain or loss nonrecognition provisions of the statute, and the case could and would have been subject to simple disposition through the application of the provisions of section 112 (a) of the Code. There would have been no relation whatever, taxwise, between the old corporation and the new corporation and there could have been no basis for the question of applicability of the rule in the *Sansome* case. *Mascot Stove Co.* v. *Commissioner*, 120 F. 2d 153, and *Templeton's Jewelers, Inc.* v. *United States*, 126 F. 2d 251. Neither would there have been any occasion, so far as I can see, to become concerned with the decision in *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179, or the reasons therefor.

In the Revenue Act of 1943, Congress, taking note in its committee reports[1] of the decisions of the Supreme Court in *Helvering* v. *Alabama Asphaltic Limestone Co.*, *supra*, *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194, and *Helvering* v. *Cement Investors, Inc.*, *supra*, and "to resolve the remaining doubts and uncertainties which result from existing law as construed in the Supreme Court decisions," inserted a new provision in the Internal Revenue Code, section 112 (b) (10), to the effect that no gain or loss is to be recognized if the property of the corporation is transferred in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation in a proceeding under section 77B of the National Bankruptcy Act to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such corporation. It also made the necessary revision or amendment of other provisions of the statute governing the basis of the stock of the new corporation to the recipients thereof and the property acquired by the new corporation and for the determination of credit for excess profits tax purposes, to bring them into harmony with other situations where a section 112 corporate reorganization had occurred.[2]

---

[1] Senate Rept. No. 627, 78th Cong., 1st Sess.; Rept. No. 1079, 78th Cong., 2nd Sess., being the Report of the House Conferees on the bill to the House of Representatives.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) EXCHANGES SOLELY IN KIND.—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(10) GAIN OR LOSS NOT RECOGNIZED ON REORGANIZATION OF CORPORATIONS IN CERTAIN RECEIVERSHIP AND BANKRUPTCY PROCEEDINGS.—No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933 in pursuance of an order of the court having jurisdiction of such corporation—

(A) in a receivership, foreclosure, or similar proceeding, or

(B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended,

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding in exchange solely for stock or securities in such other corporation.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(l) EXCHANGES BY SECURITY HOLDERS IN CONNECTION WITH CERTAIN CORPORATE REORGANIZATIONS.—

(1) GENERAL RULE.—No gain or loss shall be recognized upon an exchange consisting of the relinquishment or extinguishment of stock or securities in a corporation the plan of reorganization of which is approved by the court in a proceeding described in subsection (b) (10), in consideration of the acquisition solely of stock or securities in a corporation organized or made use of to effectuate such plan of reorganization.

(2) EXCHANGE OCCURRING IN TAXABLE YEARS BEGINNING PRIOR TO JANUARY 1, 1943.—If the exchange occurred in a taxable year of the person acquiring such stock or securities beginning prior to January 1, 1943, then, under regulations prescribed by the Commissioner with the approval of the Secretary, gain or loss shall be recognized or not recognized—

(A) to the extent that it was recognized or not recognized in the final determination of the tax of such person for such taxable year, if such tax was finally

In reporting the proposed sections to the Senate, the Senate Finance Committee, in Senate Report No. 627, noted that "Under existing law great confusion and uncertainty exist with respect to the tax consequences, both for the income and excess profits taxes, of certain insolvency reorganizations which are effected under a plan of reorganization ordered by a court having jurisdiction of the corporation which is being reorganized." It was stated that the new provisions were not intended to cover the actual liquidation in a bankruptcy proceeding and the sale of the property of the bankrupt corporation to either new or old interests and that such transactions as were involved in *Mascot Stove Co.* v. *Commissioner*, *supra*, and *Templeton's Jewelers, Inc.*, *supra*, were not to be affected. As stated in the report of the House Conferees, Report No. 1079, it was the declared purpose of the new provisions "to provide uniform treatment in all cases, regardless of the form of the particular transactions," by providing "that the relinquishment or extinguishment of the property or interest in the stock or securities of the old corporation in consideration for the acquisition of stock or securities in the new corporation is the exchange which is to be considered the taxable event in a situation of this character. No antecedent or component transaction in connection with such relinquishment or extinguishment and subsequent acquisition is recognized as a taxable event under this amendment. Thus the reorganization may take the form of a transfer of the property of the old corporation to its bondholders upon surrender of the bonds, and a subsequent transfer of the property to the new corporation in exchange for stock of such corporation, or the bonds may be transferred to the new corporation in exchange for stock of such corporation, and sub-

---

determined prior to the ninetieth day after the date of the enactment of the Revenue Act of 1943 ; or

(B) in cases to which subparagraph (A) is not applicable, to the extent that it would be recognized or not recognized under the latest treatment of such exchange by such person prior to December 15, 1943, in connection with his tax liability for such taxable year.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

\* \* \* \* \* \*

(22) PROPERTY ACQUIRED ON REORGANIZATION OF CERTAIN CORPORATIONS.—If the property was acquired by a corporation upon a transfer to which section 112 (b) (10), or so much of section 112 (d) or (e) as relates to section 112 (b) (10), is applicable, then, notwithstanding the provisions of section 270 of the National Bankruptcy Act, as amended, the basis in the hands of the acquiring corporation shall be the same as it would be in the hands of the corporation whose property was so acquired, increased in the amount of gain recognized to the corporation whose property was so acquired under the law applicable to the year in which the acquisition occurred, and such basis shall not be adjusted under subsection (b) (3) by reason of a discharge of indebtedness pursuant to the plan of reorganization under which such transfer was made.

See also section 113 (a) (6), also section 113 (b) (4), which, according to Report 1079, *supra,* was designed "to prevent reduction of the basis of the assets of the reorganized corporation by the amount of the indebtedness canceled in the proceeding in those cases in which the reorganization is consummated by the adjustment of the capital or debt structure of the existing corporation."

sequently surrendered by the latter in exchange for the property of the old corporation. In either event, the net effect to the participating security holders is an exchange of securities of the old corporation for securities of the new corporation and the transaction is so considered by subsection (1)."

It is thus apparent that, for gain or loss purposes, and as to basis of the new stock in the hands of the recipients and of the property of the old corporation in the hands of the new corporation, the situation, for the purposes here, is no different from that which exists in the case of any other corporate reorganization, whether the reorganization be a "voluntary tax-free reorganization or liquidation," or one under section 77B of the Bankruptcy Act. There is, therefore, in the discussions based on the Supreme Court's decisions in the *Cement Investors, Inc.*, and *Alabama Asphaltic Limestone Company* cases no demonstrated basis, in so far as I have been able to find, for concluding that the rule in the *Sansome* case is applicable in the one and not in the other.

The discussion in the opinion seemingly suggests that the realities and actualities of the situation at the time of the reorganization forbid a conclusion that the new corporation is to be regarded as having inherited any accumulated earnings and profits from the old corporation, in view of the fact that the reorganization was not voluntary but came about by reason of the insolvency of the old corporation, which situation, in turn, indicated that due to the then depreciated value of the corporate assets, whatever accumulated earnings the old corporation may have had had long since disappeared and could not be carried over to the new corporation. That such a thought does not dispose of the matter, is, in my opinion, indicated by the fact that the results, taxwise, in any reorganization, whether "voluntary" or under section 77B, are deliberately designed not to reflect the realities and actualities at the date of reorganization. The new corporation has received the properties of the old corporation at the same basis taxwise that those properties had in the hands of the old corporation, and that, without regard to whether or not their actual value—the price they would have commanded on the open market—was substantially greater or substantially less than the amount of such basis. And outside the corporation itself, the stockholders have their stock at the same basis at which their stake in the old corporation had been held, and that, without regard to whether or not the stock would on the open market have commanded a greater or lesser price. Furthermore, in the case of a "voluntary tax-free reorganization," where the old corporation was solvent and had accumulated earnings and profits, and the *Sansome* rule admittedly applied, those earnings and profits, as such, would come to the new corporation in the amount at which they stood in the hands of the old corporation, and that, without regard to whether or

not a liquidation of the assets, which, as stated in *Estate of Howard H. McClintic*, 47 B. T. A. 188, incorporated "the combined attributes of stated capital and paid-in or accumulated surplus," would have liquidated at the time of the reorganization at an amount sufficient to supply in dollars a greater or lesser amount than the accumulated earnings and profits as carried on the books of the old corporation. The fact is that here the assets were not so liquidated and the scheme of the statute is that the then existing actualities and realities are to be ignored and the new corporation taxwise takes the old as it stood, leaving to future transactions a determination of whether the ultimate workout will be greater or less or equal to the figures at which the new corporation took the assets over.

Accordingly, it seems to me that since Congress, by the enactment of section 112 (b) (10), which it made retroactive to years prior to the year in which the reorganization herein occurred, has so extended the scope of the reorganization provisions of the Code, we are not now at liberty to draw a line between a "voluntary tax-free reorganization" and one which was accomplished under section 77B of the Bankruptcy Act. If, then, it is properly to be concluded in the instant case that the accumulated earnings and profits of the old corporation did not go over to the new corporation, under the rule in the *Sansome* case, it must be for some other reason than that the creditors of the old corporation had "stepped into the shoes of the old stockholders" and the old corporation was reorganized under section 77B.

It is, of course, true that if the old corporation had, prior to the section 77B reorganization, paid the Montauk bonds, the said payments would have required an amount in excess of the accumulated earnings and profits and in the circumstances here, there would have been no accumulated earnings and profits to which the rule in the *Sansome* case could have applied. The facts are, however, that even though it be said that the liability on the Montauk bonds, which theretofore had been contingent, did become a present liability prior to the reorganization, neither the old corporation nor the new corporation ever paid that liability, but, under section 112 (b) (10), the bondholders, as a step in the section 77B reorganization, exchanged their bond interests for the stock of the new corporation which stock interests still continue, and the assets of neither the old nor the new corporation were diminished thereby, nor did either sustain any deductible loss by reason of such bonds. In any event, however, the Court, in its opinion, has not arrived at its conclusion on the basis or theory that the accumulated earnings and profits were consumed merely by the transition of the contingent liability under the bonds into a present liability separate and apart from the section 77B reorganization. Possibly that is because the old corporation kept its accounts and filed its returns on the cash basis, and a cash basis

taxpayer does not sustain a deductible loss on a contract of guaranty, unless and until he actually makes payment under that guaranty. *Helvering* v. *Price*, 309 U. S. 409, and *Eckert* v. *Burnet*, 283 U. S. 140.

Whatever the correct reasoning and conclusion may be on the question here presented, I am unable to agree with the reasoning and conclusion as stated in the Court's opinion, and accordingly note my dissent.